# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

REFUGIO RAMOS,

       Plaintiff,

v.                                        Civ. No.15-00980-MV

FOAM AMERICA, INC., et al.

       Defendants.

---

*Appearances:*
*For the Plaintiff:*
JAMES F. SCHERR
JOSEPH H. ISAAC
SCHERR LEGATE PLLC
109 N. Oregon Street,
Floor 12
El Paso, TX  79901

JOSEPH CERVANTES
2610 S. Espina St.
Las Cruces, NM  88001

*For the Defendants:*
*Foam America, Inc.,*
RAMON BENAVIDES, III
LAURA ENRIQUEZ
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN
100 N. Stanton
Floor 17
El Paso, TX  79901

*Nova Group Holdings, LLC, Great Northern*
*Building Products, and Great Northern*
*Holding, LLC*
EDWARD SHEPARD
DUSTIN DEMPSEY
ALLEN, SHEPARD, LEWIS & SYRA, P.A.
4801 Lang NE, Suite 200
Albuquerque, NM 87109

*C. Ortiz Corp.*
GEORGE E. MARTIN
SEAN C. WHITE
GILBERT L. SANCHEZ
KEMP SMITH LLP
200 N. Kansas St.
Suite 1700
El Paso, TX  79901

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant C. Ortiz Corp.'s Motion to Dismiss for Failure to State a Claim [Doc. 7] and Amended Motion for Leave to File Plaintiff's Amended Complaint [Doc. 77].  As a result of various procedural issues that arose due to the invocation of this Court's removal jurisdiction, Mr. Ramos filed an untimely response in opposition to the motion to dismiss with leave of the Court [Doc. 38].  C. Ortiz Corp. filed a timely reply in support of its motion [Doc. 46].  On July 5, 2016, Mr. Ramos filed a motion for leave to amend his complaint [Doc. 64].  On July 15, 2016, Mr. Ramos filed an amended version of that motion [Doc. 77].  On July 27, Defendants Great Northern Building Products, Great Northern Holding, LLC and Nova Group Holdings, LLC, opposed Mr. Ramos's amended motion to file an amended complaint [Doc. 78].  Mr. Ramos never filed a reply in support of his amended motion to amend his complaint.

The Court, having considered the various, briefs, attached materials, relevant law, and being otherwise fully informed, finds that the Motion to Dismiss [Doc. 7] will be **DENIED.**

Furthermore, as this Court previously held, Mr. Ramos's Motion to Stay the resolution of C. Ortiz Corp.'s Motion [Doc. 13] pending the resolution of Mr. Ramos's prior Motion to Remand [Doc. 14] is no longer relevant in this case because that Motion was already resolved. [*See* Doc. 48, Order re Mot. to Remand].  As a result, Mr. Ramos's Motion to Stay [Doc. 13] is **DENIED as MOOT**.

Regarding Mr. Ramos's Amended Motion to File an Amended Complaint, the Court, having considered the Motion, briefs, attached materials, relevant law, and being otherwise fully informed, finds that the Amended Motion [Doc. 77] will be **GRANTED and that Mr. Ramos**

has leave of the Court to file Attachment A thereto (the first amended complaint).  As a result, Mr. Ramos's prior motion to amend [Doc. 64] is **DENIED as MOOT.**

BACKGROUND

This case is a routine, if tragic, workplace personal injury lawsuit arising from severe burns caused by molten tar during construction performed at White Sands Missile Range, a federal enclave in New Mexico.  It comes before this Court pursuant to its removal jurisdiction. Mr. Ramos pled his case in state court, C. Ortiz Corp. removed the case to federal court, and C. Ortiz Corp. moved to dismiss Mr. Ramos's allegedly insufficient state-court pleading shortly thereafter.  Mr. Ramos has subsequently requested leave from this Court to amend his complaint.

I.      **Factual Background**[1]

a.    **Mr. Ramos's Injuries**

Mr. Ramos is a master roofer.  On or about November 19, 2013, Mr. Ramos suffered severe burns while working on a roofing project at the White Sands Missile Range near Alamogordo, New Mexico.  After lunchtime, Mr. Ramos and ten other workers began putting the last two rows of insulation on the roof of a building, and Mr. Ramos was assigned the task of mopping the last portion of the roof with hot tar.  At that time, Mr. Ramos's co-workers loaded tar into a piece of industrial equipment used to process hot molten tar known as a "lugger." After the lugger was filled with tar, one of Mr. Ramos's co-workers rolled the lugger over to the middle of the roof in order to fill tar mop buckets so that Mr. Ramos could mop the roof with

---

[1] Unless the Court indicates otherwise, to the extent any of the following facts are disputed, the Court has considered the facts in the light most generous to the plaintiff, Mr. Ramos, as is appropriate in adjudicating a motion to dismiss for failure to state a claim.  *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (in assessing a motion under Rule 12(b)(6), courts "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs.").

molten tar.  As the lugger was being rolled, it tipped over onto its right side. The lugger began to shake and then suddenly hot tar exploded out of the top spout.  The lugger sprayed Mr. Ramos with the hot tar, causing severe burns.  *See* Doc. 1-1, Compl., at 4–5.

### b.  C. Ortiz Corp.'s Insurance

C. Ortiz Corp. asserts in its Reply in support of its Motion to Dismiss that it is in compliance with New Mexico's workers compensation insurance requirements and that Mr. Ramos received workers compensation insurance for his injuries on December 13, 2013.  Doc. 46, Reply ISO MTD, at 3 n.2.  However, no party has presented any evidence in support of these claims.[2]

### c.  White Sands Missile Range

This Court has previously ruled that White Sands Missile Range is a federal enclave. Doc. 48, Order Adopting RFPD Re Mot. to Remand, at 8.

### d.  The Manufacture of the Lugger

In Mr. Ramos's proposed amended complaint, Mr. Ramos asserts that Harrisonville Equipment Company manufactured the lugger that contained the molten tar that burned Mr. Ramos.  *See* Doc. 77-1, Amended Complaint, at 3, 5–6.

## II.    Procedural Background

On August 26, 2015, Mr. Ramos filed a complaint in the Third Judicial District Court in Dona Ana County, New Mexico, and brought various state law claims against the multiple defendants mentioned in the caption to this case.  *See* Doc. 1-1, Compl., *passim*.  Mr. Ramos's complaint asserted against C. Ortiz. Corp. that the company:

1.  Failed to furnish Mr. Ramos with a safe place to work;

---

[2] This Court takes no position at this time on whether C. Ortiz Corp. will be able to establish sufficient facts to prove this affirmative defense either at trial, upon summary judgment, or pursuant to a valid pre-trial motion.

2.  Failed to supervise Mr. Ramos;

3.  Failed to provide Mr. Ramos with adequate equipment;

4.  Failed to enforce safety regulations;

5.  Failed to inspect the job site;

6.  Failed to instruct Mr. Ramos on how to perform his job;

7.  Failed to provide adequate safety personnel;

8.  Maintained negligent hiring practices that led to Mr. Ramos's injuries;

9.  Committed negligence per se;

10. Violated OSHA regulations regarding safety; and

11. Failed to train its workers.

*See* Doc. 1-1, Compl., at 5–6.

On October 29, 2015, Defendants C. Ortiz Corp. and Foam America removed this case from New Mexico state court to the United States District Court for the District of New Mexico. Doc. 1, Notice of Removal.  On November 4, 2015, C. Ortiz Corp. filed the pending Motion to Dismiss Mr. Ramos's claims against it under Rule 12(b)(6).  Doc. 7, MTD.  On November 23, 2015, Mr. Ramos filed his Motion to Remand to challenge the removal procedure invoked by the defendants and the Court's subject matter jurisdiction over the case.  Doc. 14, Mot. to Remand. On November 23, 2015, Mr. Ramos filed his Motion to Stay Ruling on C. Ortiz Corp.'s Motion to Dismiss, Pending the Court's Ruling on Plaintiff's Motion to Remand ("Motion to Stay"). Doc. 13, Mot. to Stay MTD.  Following referral of Mr. Ramos's Motion to Remand and Motion to Stay to Magistrate Judge Garza, in her "Proposed Findings and Recommended Disposition" entered January 27, 2016, Judge Garza recommended that Plaintiff's Motion to Remand be denied and Plaintiff's Motion to Stay be denied as moot.  Doc. 36, PFRD.  On February 10,

2016, Mr. Ramos filed a Motion to Extend Time to respond to C. Ortiz Corp.'s Motion to Dismiss and concurrently filed his Response in Opposition to the same Motion to Dismiss.  Doc. 38, Mot. to Extend Time; Doc. 38-1, Opp. to MTD.  Given that this Court was considering Mr. Ramos's Motion to Remand, this Court granted Mr. Ramos additional time to respond in opposition to C. Ortiz Corp.'s Motion to Dismiss.  Doc. 40, Order re Mot. to Extend Time.  On May 20, 2016, this Court adopted the finding by Magistrate Judge Garza over Mr. Ramos's objections.  Doc. 48, MOO Adopting PFRD.  Also on May 20, 2016, C. Ortiz Corp. filed its Reply in Support of its Motion to Dismiss.  Doc. 46, Reply ISO MTD.  At that point, C. Ortiz Corp.'s November 4, 2015 Motion to Dismiss became ripe for review.

On July 5, 2016, Mr. Ramos filed a Motion to File Plaintiff's Opposed Motion for Leave to File Plaintiff's Amended Complaint. Doc. 64, Mot. to File 1st Amend. Compl.  On July 15, 2016, Mr. Ramos filed an Amended Motion for Leave to File Plaintiff's Amended Motion for Leave to File Plaintiff's Amended Complaint adding new defendants and additional facts in order to satisfy the heightened pleading standards of federal court.  Doc. 77, Amend. Mot. to File 1st Amend. Compl., at 1.  On July 27, Defendants Great Northern Building Products, Great Northern Holding, LLC and Nova Group Holdings, LLC, opposed Mr. Ramos's amended motion to file an amended complaint on the grounds that the newly added defendants could easily prevail on summary judgment. *See* Doc. 78, Opp. to Amend. Mot. to File 1st Amend. Compl. Mr. Ramos never filed a reply in support of his amended motion to amend his complaint.

**ANALYSIS**

### I.  <u>Standard of Review: Motion to Dismiss</u>

When evaluating a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), courts ask "whether the factual allegations in the complaint, if accepted as true, allege a plausible

claim for relief." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n.*, 771 F.3d 1230, 1236 (10th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).  At this early stage, the "court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial" but to determine whether the pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135–56 (10th Cir. 2014) (internal quotation marks and citations omitted).  Hence, while a "complaint need not set forth detailed factual allegations" it cannot rely solely on "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207, 1247 (D.N.M. 2014).  A complaint need not include "all facts necessary to carry the plaintiff's burden." *Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  Instead, a complaint must allege a cause of action that could be true if the plaintiff "has a reasonable likelihood of mustering factual support" that renders success in the lawsuit more than a "metaphysical possibility[.]" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In assessing a motion under Rule 12(b)(6), courts "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).  Facts that are not well pled may not be taken as true for the purpose of assessing a motion to dismiss.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Even so, where a court believes that potential defects in a complaint may be remedied, it should grant leave to amend, rather than dismissing the claim.  *See e.g.*, *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 256 n.14 (3d Cir. 2010) ("if a complaint is vulnerable to [Federal Rule of Civil Procedure] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or

futile.  That rule applies even if the plaintiff does not seek leave to amend.") (internal quotation marks and citations omitted); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) ("[W]e have repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts.") (internal quotation marks omitted).  Here, the complaint is satisfactorily pled, and as a result no amendment is necessary.  However, as described below, Mr. Ramos will be provided with an opportunity to amend his complaint pursuant to Rule 15 in the interests of justice.  Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave [to amend a complaint] when justice so requires.").

## II.    Choice of Law and Federal Enclave Doctrine

This Court has jurisdiction to hear this case pursuant to its federal enclave jurisdiction under 28 U.S.C. § 5001.  Doc. 48, Order Adopting RFPD Re Mot. to Remand, at 8.  Although federal law confers jurisdiction over this Court, "in a civil action for personal injuries on a federal enclave, the rights of the parties are determined by state law[.]"  *Id.*  Because the White Sands Missile Range is located within the borders of the State of New Mexico, New Mexico law supplies the parties' substantive rights in this case.  28 U.S.C. § 5001 ("in a civil action brought to recover on account of an injury sustained [on a federal enclave], the rights of the parties shall be governed by the law of the State in which the place is located.").

C. Ortiz Corp. asserts that, in addition to the tort laws of the State of New Mexico, New Mexico worker's compensation laws, codified in the Mexico Workers' Compensation Act, N.M. Stat. Ann. §§ 52-1-1, *et seq*. ("NMWCA"), also apply to White Sands Missile Range.  Doc. 7, MTD, at 5–6.  In *Goodyear Atomic Corp. v. Miller*, the Supreme Court held that under the Supremacy Clause of the Constitution: "a federally owned facility performing a federal function

is shielded from direct state regulation, even though the federal function is carried out by a private contractor, unless Congress clearly authorizes such regulation."  486 U.S. 174, 181 (1988).  While *Goodyear Atomic Corp.* in some instances shields contractors from state-law liability for their tortious conduct on federal land, this is not the case where Congress has "provide[d] for the application of state laws enacted after the creation of the enclave." *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1237 (10th Cir. 2012).  Congress has specifically provided that "state authority charged with enforcing and requiring compliance with the state workers' compensation laws . . . may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession . . . to the same extent as if the premises were under the exclusive jurisdiction of the State in which the land . . . [is] located."  40 U.S.C. § 3172.  As a result of congressional action, state workers' compensation law applies on federal enclaves.

Because Congress has legislated that the NMWCA applies to tortious conduct on White Sands Missile Range, the NMWCA applies to this case.  Mr. Ramos does not challenge the applicability of the NMWCA to this case.  *See generally* Doc. 38-1, Opp. to MTD.

## III. <u>Mr. Ramos's Negligence Claims</u>

### a. Statutory Background

C. Ortiz Corp. argues that Mr. Ramos's negligence claims are precluded under the NMWCA.  Doc. 7, MTD, at 6–8.  The traditional narrative surrounding workers' compensation legislation is that it represents a compromise between workers who wanted to receive compensation for their injuries without risking litigation in an unfavorable legal climate and employers who wanted to mitigate their exposure to risk from large tort judgments.  *See, e.g.*, LEX K. LARSON & THOMAS A. ROBINSION, LARSON'S WORKERS' COMPENSATION LAW § 2.07

(Mathew Bender 2016) (hereinafter "LARSON") (stating that this legislative compromise was prompted because, by the end of the nineteenth century "the coincidence of increasing industrial injuries and decreasing remedies had produced in the United States a situation ripe for radical change").[3] In general, compensation under a workers' compensation law regime is considered to be more "efficient" and "certain" than the more risky option of filing a tort lawsuit. *Id.* at §1.03. Because workers' compensation legislation was designed to in part supplant tort judgments against employers "it is almost impossible to mix [tort law and workers' compensation law] and get a satisfactory result." *Id.* at § 1.03. Numerous New Mexico courts have affirmed this understanding of New Mexico workers' compensation laws. *See, e.g., Richey v. Hammond Conservancy Dist.*, 346 P.3d 1183, 1185 (N.M. Ct. App. 2015) ("The purpose of the [NMWCA's] exclusivity provision is to achieve balance between injured workers' need for compensation and employers' need to limit liability for work-related injuries.").

Like most workers' compensation statutes, the NMWCA makes workers' compensation benefits a worker's exclusive remedy for most workplace torts if certain conditions are met. N.M. STAT. ANN. 1978 § 52-1-9 (1973); *see also* N.M. STAT. ANN. 1978 § 52-l-6(E) ("[t]he Workers' Compensation Act provides exclusive remedies."). As the New Mexico Supreme Court held in the case *Delgado v. Phelps Dodge Chino, Inc.,* the NMWCA is supposed to assure an employer "that a worker accidentally injured, even by the employer's own negligence, will be limited to compensation under the Act and may not pursue the unpredictable damages available outside of its boundaries." 131 N.M. 272, 276 (N.M. 2001). As a result, an employer who has complied with the provisions of the NMWCA may assert as an affirmative defense that it is not

---

[3] Although the New Mexico Supreme Court disagreed with the Larson treatise on a particular point of law in its landmark decision *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272, 278–79 (2001), the treatise remains useful in explaining the background to workers' compensation statutes.

subject to tort liability for workplace tortious injury to employees except as set forth in the NMWCA.  *See Martin-Martinez v. 6001, Inc.*, 126 N.M. 319, 323 (N.M. Ct. App. 1998).

### b.  C. Ortiz Corp.'s Affirmative Defense

In order to prove the affirmative defense that a tort claim is barred by the NMWCA, a defendant must prove that the NMWCA applies to the particular claim and that the defendant "complied with the provisions of the NMWCA."  *See* N.M. STAT. ANN. §§ 52-1-6(C) & (D) ("compliance with the provisions of the [NMWCA] . . . shall be, and be construed to be, a surrender by the employer and the worker of their rights . . . to any cause of action at law"); § 52-18; § 52-1-9; *Peterson v. Wells Fargo Armored Servs. Corp.,* 129 N.M. 158, 161 (N.M. Ct. App. 2000) ("[i]n order to take advantage of the exclusive remedy provisions of the Act, an employer must comply with the provisions of the Act concerning insurance . . . [i]f the employer fails to comply with those provisions, the worker can sue the employer either for compensation benefits or for damages in tort caused by the employer's negligence").

Here, C. Ortiz Corp. has raised its affirmative defense at the motion to dismiss stage of the litigation.  Doc. 7, MTD, at 6–8.  As a general matter, this Court is reticent to summarily dismiss a claim under Rule 12(b)(6) based on an asserted affirmative defense rather than based on deficiencies in the pleading or the legal theory asserted by a plaintiff.  *See Cole v. Sec'y Dep't of Corr.*, 451 F. App'x 827, 828 (11th Cir. 2011) (a 12(b)(6) motion may be based on an affirmative defense when that defense appears "on the face of the complaint."); CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1357 (4th ed. 2016) (discussing the appropriateness of dismissal under Rule 12(b)(6) based on an affirmative defense).  This is because "a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses.  But when a plaintiff's complaint nonetheless sets out all of the elements of

an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 274 (5th Cir. 2015) (same).

At this stage in the proceedings, C. Ortiz Corp. has not presented evidence supporting its affirmative defense, including proof that it had complied with the requirements of the NMWCA in a manner that entitles C. Ortiz Corp. to the protections from suit listed under that Act. *See generally* Doc. 46, Reply ISO MTD (attaching no documents or affidavits); Doc. 7, MTD (same); *cf.* Doc. 78, Opp. to Amend. Mot. to File 1st Amend. Compl. (providing 32 pages of evidence, including a supporting declaration).

Because C. Ortiz Corp.'s affirmative defense is based on facts not presented by C. Ortiz Corp. rather than deficiencies on the face of Mr. Ramos's pleading, the motion to dismiss will be denied.

### IV.   Mr. Ramos's *Delgado* Tort Claims

#### a.   Asserting a *Delgado* Claim

The parties also dispute at the motion-to-dismiss stage whether Mr. Ramos has properly asserted an intentional tort claim under New Mexico law pursuant to *Delgado v. Phelps Dodge Chino, Inc.*, 131 N.M. 272 (2001).  Doc. 38-1, Opp. to MTD, at 6–8.  C. Ortiz Corp. takes the position that *Delgado* does not apply in this case because all of Mr. Ramos's alleged causes of action sound in negligence, rather than intentional tort.  Doc. 46, Reply ISO MTD, at 6–8.

As explained above, generally compliance with the terms of the NMWCA by an employer will prevent a workplace tort lawsuit against that employer by an employee.  However, as the New Mexico Supreme Court held in its landmark case *Delgado v. Phelps Dodge Chino,*

*Inc.*, the exclusive remedy provision of the NMWCA, when it exists as a complete bar to tort litigation:

> is subject to abuse from both sides. . . . An unscrupulous worker, for example, might seek recovery from a self-induced injury, knowing that the [NMWCA] generally awards compensation regardless of fault.  An employer, on the other hand, may abuse the [NMWCA] by subjecting a worker to injury after determining that the economic advantage of the injurious work outweighs the limited economic detriment that the Act will impose upon the employer after the injury occurs.

131 N.M. 272, 278–79 (2001).  As a result of the injustice imposed by the New Mexico courts previous standards requiring "actual intent" regarding the NMWCA and in order to bring the legal standards for liability more closely in line with the purposes of the NMWCA, the New Mexico Supreme Court decided to "re-evaluate" the test for determining when a tort action against an employer is barred.  *Id.* at 278; *see also Salazar v. Torres*, 141 N.M. 559, 563 (2007).

In *Delgado*, the New Mexico Supreme Court held that the New Mexico Worker's Compensation Act could not preclude tort actions where an employer's conduct is better construed as intentional rather than negligent.  *Delgado*, 131 N.M. at 279.  However, intentionality under the NMWCA, following *Delgado*, is not strictly determined under an "actual intent" test.  *Id.* ("Under the actual intent test, a single standard of culpability, namely willfulness, will prevent a worker from benefitting from the Act while preserving the corresponding benefits for the employer.  This bias violates the explicit mandate of Section 52–5–1, which demands the equal treatment of workers and employers.").  In order to do justice to the intention of the NMWCA and address the egregious conduct of the employer in *Delgado*, the New Mexico Supreme Court set forth a new test for determining when conduct falls outside the scope of the Act, stating:

> [W]illfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when: (1) the worker or employer engages in an intentional act

13

or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Delgado,* 131 N.M. at 280; *see also Richey v. Hammond Conservancy Dist.*, 346 P.3d 1183, 1186 (N.M. Ct. App. 2015). The *Delgado* Court further explained each of these elements – or "prongs" – clarifying that: "The first prong presents an objective threshold question. Under this prong . . . we determine whether a reasonable person would expect the injury suffered by the worker to flow from the intentional act or omission." *Delgado,* 131 N.M. at 280. "The second prong requires an examination of the subjective state of mind of the worker or employer. If the worker or employer decided to engage in the act or omission without ever considering its consequences, this prong is satisfied." *Id.* "The third prong echoes [NMWCA] Section 52-1-11" which provides that if a worker intentionally and proximately causes her own injury, that injury is "non-compensable." *Id.* In summary, *Delgado* requires a plaintiff to prove that an intentional act or omission by an employer that a reasonable person would expect to injure the worker actually did – either directly or proximately – injure the worker, and that action by the employer is not superseded by an intervening willful act of the worker. *Id.*

### a.   The Facial Sufficiency of Mr. Ramos's *Delgado* Claim

In its Reply, C. Ortiz Corp. asserts that in order to satisfy *Delgado*, Mr. Ramos is required to allege facts such that the conduct by C. Ortiz Corp. is "so extreme and dangerous as to permit recovery." Doc. 46, Reply ISO MTD, at 6. C. Ortiz Corp. further asserts that Mr. Ramos has not alleged any facts regarding C. Ortiz Corp.'s conduct that are "well-pleaded" and thus none of the facts supporting Mr. Ramos' *Delgado* claim can be taken as true. *Id.* at 7. In so asserting, C. Ortiz Corp. relies on a number of cases where plaintiffs' *Delgado* claims failed, *Id.*

at 7. However, essentially all of those cases were resolved against the plaintiff on summary judgment, and not at the motion to dismiss stage of the litigation before discovery was conducted. *E.g.*, *Dominguez v. Perovich Properties, Inc.,* 137 N.M. 401, 401 (N.M. Ct. App. 2005) (resolving case on summary judgment); *May v. DCP Midstream, L.P.*, 148 N.M. 595, 597 (N.M. Ct. App. 2010) (same); *Wells v. U.S. Foodservices, Inc.,* 95 Fed. App'x 302, 302 (10th Cir. 2004) (same); *Cordova v. Peavy Co.,* 111 Fed. App'x 992, 993 (10th Cir. 2004) ("*Cordova II*") (same). Of the cases interpreting *Delgado*, the Court is only aware of two that involve the *Delgado* standard at the motion to dismiss stage: *Morales v. Reynolds/Fernandez v. Brown – Minneapolis Tank Co.,* 136 N.M. 280, 287 (N.M. Ct. App. 2004) ("*Morales*") (granting a motion to dismiss) and *Richey v. Hammond Conservancy Dist.*, 346 P.3d 1183, 1191 (N.M. Ct. App. 2015) (denying a motion to dismiss). Both are discussed below.

In *Morales*, a case following closely on the heels of *Delgado*, the New Mexico Court of Appeals took the opportunity to clarify how *Delgado* should apply to both motions to dismiss and motions for summary judgment. 136 N.M. 280 (N.M. Ct. App. 2004). The Court of Appeals stated that "in order to survive a motion to dismiss . . . a plaintiff must allege all three *Delgado* elements: willful conduct akin to the employer's conduct in *Delgado*, the employer's state of mind, and a causal connection between the employer's intent and the injury." *Id.* at 285. In the portion of the opinion dealing applying this standard, *Id.* at 286–87, the Court of Appeals held that a complaint that stated that an employer "could have reasonably anticipated that an injury would occur" was "not enough to satisfy the subjective intent element of *Delgado*." *Id.*

By contrast, in the more recent *Richey v. Hammond Conservancy District* case, the New Mexico Court of Appeals held that the plaintiff had sufficiently stated a claim under *Delgado* when the plaintiff asserted that the defendant knew that a particular workplace activity was

dangerous and that defendant had required the plaintiff to engage in the activity after the plaintiff had objected.  346 P.3d 1183, 1189 (N.M. Ct. App. 2015).  Based on the Court's review of the above case law, the Court notes that an assessment of the *Delgado* factors is often a fact-based inquiry that New Mexico state courts prefer to leave to summary judgment, after the close of discovery.  However, if a plaintiff fails to adequately plead the *Delgado* factors, a rejection of the complaint may be appropriate.  *Morales*, 136 N.M. at 286–87.

Under federal law, if a plaintiff's claim is inadequately pled, the most just result is to allow the plaintiff a chance to re-plead their case.  *See e.g.*, *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 256 n.14 (3d Cir. 2010) ("if a complaint is vulnerable to [Federal Rule of Civil Procedure] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.  That rule applies even if the plaintiff does not seek leave to amend.") (internal quotation marks and citations omitted); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (same).  The Court is aware that this case was originally pled in New Mexico state court and removed by C. Ortiz Corp.  Doc. 1, Not. of Removal (filed by C. Ortiz Corp.).  The Court is also aware that Mr. Ramos has pending two motions to amend his complaint.  Docs. 64 & 77, Motion for Leave to File Amended Complaint and Amended Motion for Leave to File Amended Complaint.

Here, Mr. Ramos's original state-court complaint asserted against C. Ortiz. Corp. that the company:

1. Failed to furnish Mr. Ramos with a safe place to work;

2. Failed to supervise Mr. Ramos;

3. Failed to provide Mr. Ramos with adequate equipment;

4. Failed to enforce safety regulations;

16

5.  Failed to inspect the job site;

6.  Failed to instruct Mr. Ramos on how to perform his job;

7.  Failed to provide adequate safety personnel;

8.  Maintained negligent hiring practices that led to Mr. Ramos's injuries;

9.  Committed negligence per se;

10. Violated OSHA regulations regarding safety; and

11. Failed to train its workers.

*See* Doc. 1-1, Compl., at 5–6.  These allegations "constru[ed] in a light most favorable to the complaint's sufficiency" and if done with the subjective mental state required under the second *Delgado* factor, may be sufficient to state a cognizable *Delgado* claim.  *See Richey*, 346 P.3d at 1190.  As noted above, federal courts apply a generous standard when weighing the sufficiency of a complaint under Rule 12(b)(6).  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n.*, 771 F.3d 1230, 1236 (10th Cir. 2014) (assessing "whether the factual allegations in the complaint, if accepted as true, allege a plausible claim for relief"); *Khalik v. United Airlines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (noting that a complaint need not include "all facts necessary to carry the plaintiff's burden"); *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009) (explaining that courts "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs.").

Given the generous standard by which factual assertions are weighed by federal courts, Mr. Ramos has adequately pled a *Delgado* claim.  At this early stage, the "court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial" but to determine whether the pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Brokers' Choice of America, Inc. v. NBC*

*Universal, Inc.*, 757 F.3d 1125, 1135–56 (10th Cir. 2014) (internal quotation marks and citations omitted).  The Court further notes that even if Mr. Ramos's complaint were inadequately pled, Mr. Ramos is being given leave to amend his complaint, as noted below. [4]

## V.    Mr. Ramos's Motion to Amend His Complaint

Mr. Ramos has moved to amend his complaint "in order to plead his claims with additional specificity and detail to conform with the Federal Rules of Civil Procedure, and to clarify his pleaded claims against Defendants in this case" as well as "to add new Defendants, specifically Harrisonville Equipment Company, Joe Reeves, John Reeves, and Amy Reeves, and JNR Enterprises, Inc. ["HECO Defendants"]."  Doc. 77, Amend. Mot. to File 1st Amend. Compl., at 1.  Defendants Great Northern Building Products, Great Northern Holding, LLC and Nova Group Holdings, LLC, opposed Mr. Ramos's amended motion to file an amended complaint on the grounds that the newly added HECO Defendants could easily prevail on summary judgment.  *See* Doc. 78, Opp. to Amend. Mot. to File 1st Amend. Compl., at 4–5.  The HECO Defendants provide substantial evidence in support of their claim, including a declaration from the CEO of Harrisonville Equipment Company and various interrogatory responses indicating that Mr. Ramos is unlikely to meet the standard for manufacturer liability under New Mexico law.  Doc. 78-1, Documentation ISO Opp. to Amend. Mot. to File 1st Amend. Comp., 1–32.

Under Rule 15, "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Here, Mr. Ramos has not had a chance to amend his complaint since it was removed to federal court by C. Ortiz Corp.  Doc. 1, Notice of Removal.

---

[4] The Court specifically notes that if the Delgado claim were not adequately pled because Mr. Ramos never specifically used the word "willful" to describe C. Ortiz Corp.'s conduct, that defect is remedied in Mr. Ramos's amended complaint.  Doc. 77-1, Proposed 1st Amend. Compl., at 5–6.

Moreover, as far as this Court is aware, Mr. Ramos has not afforded the opportunity to conduct discovery in order to rebut the substantial evidence presented by the HECO Defendants in their opposition to Mr. Ramos's first amended complaint.  Thus, while the Tenth Circuit has held that a trial court may deny a motion to amend a complaint if the "proposed amendment is futile . . . including that the amendment would not survive a motion for summary judgment," *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240–41 (10th Cir. 2001), it is not clear that the HECO Defendants will prevail on summary judgment.  Before this Court makes such a determination, it must know what evidence Mr. Ramos will have mustered in support of his claim against the HECO Defendants after discovery is conducted.  *See Compton v. Rent-A-Ctr., Inc.*, 350 Fed. App'x 216, 221–222 (10th Cir. 2009) (denying a motion for leave to amend a complaint because it was filed after "litigation had progressed well into the summary-judgment stage, and he did not proffer an adequate explanation for the delay.").

Because it is not clear the HECO Defendants will prevail on summary judgment and because the interests of justice so require, Mr. Ramos is given leave to file his first amended complaint.

### CONCLUSION

Mr. Ramos has sufficiently pled his *Delgado* claim and C. Ortiz Corp.'s fact-based affirmative defense is not appropriately presented for adjudication on a motion to dismiss.

**IT IS THEREFORE ORDERED** that that the Motion [Doc. 7] will be **DENIED.**

**IT IS FURTHER ORDERED** that Mr. Ramos's Motion to Stay the resolution of C. Ortiz Corp.'s Motion [Doc. 13] pending the resolution of Mr. Ramos's prior Motion to Remand [Doc. 14] is no longer relevant in this case because that Motion was previously resolved by this

Court.  [Doc. 48, Order re Mot. to Remand].  As a result, Mr. Ramos's Motion to Stay [Doc. 13] is **DENIED as MOOT**.

      **IT IS FURTHER ORDERED** that Mr. Ramos's Amended Motion to File an Amended Complaint [Doc. 77], will be **GRANTED.**  As a result, Mr. Ramos's prior motion to amend [Doc. 64] is **DENIED as MOOT.**

      Mr. Ramos will have 14 days from the entry of this Order to file his First Amended Complaint.

DATED this 30th  day of August, 2016.

 

                          _____

                          MARTHA VAZQUEZ
                          United States District Judge