**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

REFUGIO RAMOS,

        Plaintiff,

v.                                           CIV No. 15-980 CG/KRS

FOAM AMERICA, INC., et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants Reeves Roofing Equipment Co.,

Inc., JNR Enterprises, Inc., Joe Reeves, John Reeves, and Amy Reeves' (collectively the

"Reeves Defendants") *Motion to Dismiss for Lack of Personal Jurisdiction* (the "Motion to

Dismiss"), (Doc. 167), filed August 21, 2017; Defendants Great Northern Building

Products, Great Northern Holding, LLC, and Harrisonville Equipment Company's

*Response in Opposition to Defendants Reeves Roofing Co., Inc., JNR Enterprises, Inc.,*

*Joe Reeves, John Reeves, and Amy Reeves' Motion to Dismiss* (the "Great Northern

Response"), (Doc. 168), filed September 5, 2017; Plaintiff Refugio Ramos' *Response to*

*Defendants Reeves Roofing Equipment Co., Inc., N/K/A JAJ Equipment, Inc., JNR*

*Enterprises, Inc., Joe S. Reeves, John Reeves, and Amy Reeves' Motion to Dismiss for*

*Lack of Personal Jurisdiction* ("Plaintiff's Response"), (Doc. 171), filed September 5,

2017; and the Reeves Defendants' *Reply in Support of Their Motion to Dismiss for Lack of*

*Personal Jurisdiction* (the "Reply"), (Doc. 189), filed October 10, 2017.

Also before the Court are Plaintiff's *Objection to Defendant JAJ Equipment, Inc.,*

*F/K/A Reeves Roofing Equipment Co., Inc.'s Motion to Dismiss for Lack of Personal*

*Jurisdiction and Notice of Waiver* (the "Objection"), (Doc. 192), filed October 22, 2017; the

Reeves Defendants' *Motion to Strike or Disregard Plaintiff's "Objection" to Their Motion to Dismiss* (the "Motion to Strike"), (Doc. 211), filed January 5, 2018; Plaintiff's *Response in Opposition to Reeves Defendants' Motion to Strike or Disregard Plaintiff's Objection to Their Motion to Dismiss (Doc. 211)* (the "Response to the Motion to Strike"), (Doc. 215), filed January 17, 2018.

After reviewing the briefing, the Court finds that it may consider the argument Plaintiff raises in the Objection, but that the Court lacks personal jurisdiction over the Reeves Defendants. Therefore, for the following reasons, the Reeves Defendants' Motion to Strike is **DENIED** and the Reeves' Defendants' Motion to Dismiss is **GRANTED**.

## I. Background

This case arises from injuries Plaintiff suffered on a commercial roofing job while employed by Defendant C. Ortiz Corporation ("C. Ortiz"). Plaintiff was injured when a tar lugger overturned and spilled hot tar onto him. (Doc. 192 at 1-2). The tar lugger involved in the incident was designed, manufactured, marketed, and sold by defendant Reeves Roofing Equipment Co., Inc. ("Reeves Roofing"), a Texas corporation. Defendants Joe Reeves, John Reeves, and Amy Reeves (the "Individual Reeves Defendants") were employees and officers of Reeves Roofing before its sale to Defendant Great Northern Holdings, LLC ("Great Northern"). (Docs. 167 at 4; 171 at 2). Following its sale, Reeves Roofing changed its name to JAJ Equipment, Inc. ("JAJ")[1] and ceased operation. (Doc. 167 at 2). Defendant JNR Enterprises, Inc. ("JNR"), another Texas corporation, is a holding company. JNR is the sole shareholder of JAJ, and leased land to JAJ on which JAJ manufactured roofing equipment. (Doc. 167-1 at 2).

1 For clarity and ease of reference, the Court will refer to both Reeves Roofing and JAJ as "JAJ."

After his injury, Plaintiff brought claims against the Reeves Defendants alleging strict liability, recklessness, and negligence in designing, manufacturing, marketing, and selling the tar lugger. (Doc. 85 at 5-6) (Amended Complaint). Plaintiff alleged that JAJ and JNR are Texas corporations doing business in New Mexico and that the Individual Reeves Defendants participated in designing and marketing the tar lugger. *Id.* at 2, 4. In its Answer to the Amended Complaint, JAJ denied that it does business in New Mexico, (Doc. 93 at 2), while JNR and the Individual Reeves Defendants filed a *Motion to Dismiss for Lack of Personal Jurisdiction* (the "First Motion to Dismiss"), (Doc. 102). Plaintiff then moved to stay a ruling on the First Motion to Dismiss and to allow ninety days of jurisdictional discovery. (Doc. 106). JNR and the Individual Reeves Defendants consented to discovery provided it was narrowly tailored to facts related to personal jurisdiction. (Doc. 108). The other Defendants in this case did not oppose allowing jurisdictional discovery, but they preferred to proceed with general discovery rather than wait for a ruling on the First Motion to Dismiss. (Doc. 115). Accordingly, the Court ordered ninety days of jurisdictional discovery and allowed general discovery against the rest of the Defendants, including JAJ. *Id.*

Jurisdictional discovery revealed the following facts. JAJ was originally founded and incorporated in Texas in 1966 and manufactured roofing equipment, including tar luggers. (Doc. 167-1 at 3). Between 2010 and 2011, JAJ sold to four customers in New Mexico: The Flashing Company and L&P Building Supply in Las Cruces, NM; Reed Roofing and Construction Co. in Clovis, NM; and Albuquerque Equipment and Roofing Supply ("Albuquerque Equipment") in Albuquerque, NM. (Doc. 167-7 at 7-10). In fiscal year 2008-2009, JAJ made no sales to New Mexico-based customers, and in fiscal year

2009-2010, JAJ made one sale to The Flashing Company. (Doc. 167-3 at 1-6). Ms. Reeves estimated making 50 sales to New Mexican customers over 20 years, though she was not the main order receiver, (Doc. 167-1 at 6), and sales were not made every year, (Doc. 167-1 at 7).

JAJ owned no property and maintained no physical presence in New Mexico, nor did it send agents or salespeople into New Mexico. Rather, JAJ considered Albuquerque Equipment its "distributor." (Doc. 167-1 at 7). JAJ provided Albuquerque Equipment with brochures of its products and included Albuquerque Equipment on its mass email list. *Id.* If a customer from New Mexico called JAJ, JAJ would refer the customer to Albuquerque Equipment. *Id.* If Albuquerque Equipment did not have what the customer needed, the customer could call JAJ directly. *Id.* JAJ's representatives also occasionally spoke with Albuquerque Equipment's employees. (Doc. 167-1 at 4, 7). JAJ had a practice of extending credit to customers and calling references as part of a credit check, but JAJ did not extend credit to anyone in New Mexico. *Id.*

Regarding the particular tar lugger involved in this case, JAJ did not sell it to Albuquerque Equipment or any other New Mexico customer. Rather, C. Ortiz bought the tar lugger in El Paso, Texas, from another roofing company and brought it into New Mexico. (Doc. 167-8 at 2). C. Ortiz purchased several tar luggers and does not know which one contributed to Plaintiff's injuries. *Id.* at 3.

Following jurisdictional discovery, the Reeves Defendants, including JAJ, filed the Motion to Dismiss. (Doc. 167). The Reeves Defendants argue they lack the sufficient minimum contacts with New Mexico for the Court to exercise personal jurisdiction over them, and even if they did have sufficient contacts, they claim exercising jurisdiction over

them would "offend traditional notions of fair play and substantial justice." *Id.* at 10. In Plaintiff's Response, he argues that these defendants are subject to personal jurisdiction, that exercising personal jurisdiction over them would not offend traditional notions of fair play and substantial justice, and that the Reeves Defendants are alter-egos of one another, therefore if the Court has jurisdiction over one of them, the Court has jurisdiction over all of them. (Doc. 171). In their Reply, the Reeves Defendants dispute Plaintiff's contentions that their contacts with New Mexico are sufficient to establish personal jurisdiction over them. (Doc. 189 at 2-12). The Reeves Defendants did not reply to Plaintiff's alter-ego argument.

Great Northern opposes dismissing the Reeves Defendants because the Reeves Defendants agreed to indemnify, defend, and hold Great Northern harmless as part of their purchase agreement. (Doc. 168 at 2-3). Great Northern only opposed the Motion to Dismiss to preserve these rights and does not argue that the indemnification clause confers personal jurisdiction. *Id.* The Reeves Defendants also did not reply to Great Northern's Response.

After the Reeves Defendants filed their Reply and a *Notice of Completion of Briefing*, (Doc. 190), Plaintiff filed his Objection, arguing for the first time that JAJ has waived its right to assert the Court lacks personal jurisdiction over it. (Doc. 192). Plaintiff contends that JAJ waived this defense because it "did not challenge" personal jurisdiction in its answer to the amended complaint, (Doc. 93), and was not a party to the First Motion to Dismiss. (Doc. 192 at 1-2). The Reeves Defendants did not respond to the Objection.

Instead, the Reeves Defendants filed the Motion to Strike, stating the Court should either strike the Objection from the record or at least disregard the arguments therein.

(Doc. 211). The Reeves Defendants first claim the Objection is an improper surreply filed without leave of court. *Id.* at 1-4. Second, according to the Reeves Defendants, Plaintiff's waiver argument is meritless because JAJ denied Plaintiff's only jurisdictional allegation, (Doc. 93 at 2), and lack of personal jurisdiction is not an affirmative defense that must be pled in an answer. (Doc. 211 at 4-6).

In response to the Motion to Strike, Plaintiff first denies that his Objection should be ignored because it is procedurally improper. Rather, he says, under the applicable Federal Rules of Civil Procedure, plaintiffs cannot waive their right to assert a defendant has waived its right to assert lack of personal jurisdiction. (Doc. 215 at 5-9). Second, Plaintiff disputes that he is substantively incorrect. Assuming for the sake of argument that JAJ sufficiently raised lack of personal jurisdiction in its answer, Plaintiff instead argues that JAJ has waived the defense through its conduct and participation in this case. *Id.* at 9-12. The Reeves Defendants have not filed a reply in support of the Motion to Strike, and the time for doing so has passed.

The Motion to Dismiss, Objection, and Motion to Strike all affect the ultimate question before the Court: are the Reeves Defendants subject to the Court's jurisdiction? Because the Motion to Strike and the Objection relate to what arguments and which defendants are properly before the Court, the Court will start with those. The Court will then discuss whether or not it has personal jurisdiction over the Reeves Defendants.

**II.    Analysis**

   *a.  Whether the Court should strike or disregard Plaintiff's Objection*

In his Objection, Plaintiff argues JAJ has waived its right to assert lack of personal jurisdiction. Plaintiff did not argue this in his Response and filed the Objection after

briefing on the Motion to Dismiss was complete. The Reeves Defendants responded by moving to strike or disregard the Objection because it is a surreply that Plaintiff filed without leave of Court, which is required under Local Rule of Civil Procedure 7.4(b). (Doc. 211 at 3-4) (citing D.N.M.LR-Civ. 7.4(b)). In response, Plaintiff claims he is entitled to raise his waiver argument at any time, including on appeal. (Doc. 215 at 4-9).

A surreply is a movant's second reply to another's party's opposition to a motion. *Surreply*, Black's Law Dictionary (10th ed. 2014). Technically, Plaintiff's Objection is a surresponse: a second response by someone who opposes a motion, filed after a movant's reply. *Surresponse*, Black's Law Dictionary (10th ed. 2014). However, the terms have been used interchangeably. *See Walker v. THI of N.M. at Hobbs Center*, 2011 WL 2728344, at *1 (D.N.M. July 6, 2011) (unpublished). Filing a surreply requires leave of court and should be allowed when a reply raises new arguments. *Id.* Here, Plaintiff did not request leave of Court to file the Objection, and the Reeves Defendants' Reply did not raise any new arguments, so a surreply was not warranted.

Nonetheless, Plaintiff argues his Objection should not be stricken given the strict provisions of Fed. R. Civ. P. 12(h). Under Rule 12(h), a party waives certain defenses, including lack of personal jurisdiction, by failing to include them in an answer or pre-answer motion. Fed. R. Civ. P. 12(h)(1)(B). The rule "reflects a strong policy against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 721 (3rd Cir. 1982). Additionally, the rule "benefits the court as well as the opposing party by requiring the litigant to raise certain technical objections, the basis of which should be apparent from the outset of the action, before litigation has moved forward." *Id.*

In *Myers*, the American Dental Association ("ADA") moved to dismiss the complaint due to improper venue, which the trial court denied. *Id.* at 719; *see* Fed. R. Civ. P. 12(b)(3). Then, on appeal, the ADA challenged whether the trial court had personal jurisdiction over it. *Id.* The plaintiff did not object to the ADA untimely raising its jurisdictional defense until after briefing was complete, and the ADA argued the plaintiff lost its right to argue later that the ADA had waived the jurisdictional defense under Rule 12(h). *Id.* at 721.

Relying on *Pila v. G.R. Leasing & Rental Corporation*, 551 F.2d 941 (1st Cir. 1977), the Third Circuit Court of Appeals rejected the idea that the plaintiff waived its 12(h) argument by failing to object earlier. *Id.* The Third Circuit agreed with the First Circuit that waiver under Rule 12(h) is a "fundamental and incurable matter," and stated "it may sometimes be appropriate for an appellate court to enforce [Rule 12(h)] sua sponte." *Id.* (quoting *Pila*, 551 F.2d at 943). In a similar situation, the New Mexico Court of Appeals held that raising a Rule 12(h) defense is timely as long as it has been raised before trial. *See Rupp v. Hurley*, 1999-NMCA-057, ¶¶ 34-43, 127 N.M. 222, 979 P.2d 733 (treating an objection based on Rule 12(h)(1) as "failure to state a legal defense" under Rule 12(h)(2)).

Given the policy behind Rule 12(h) and the foregoing persuasive authority, the Court agrees that Plaintiff has not forfeited its argument that JAJ has waived its jurisdictional defense under Rule 12(h). The Rule requires defendants to raise preliminary, technical arguments early in litigation, and as discussed, this is for the Court's and the parties' benefit. Plaintiff has raised the argument prior to trial or resolution of any claims on their merits, so the Court can consider this argument without affecting any other parties' claims and defenses. The Court will therefore deny the Motion to Strike,

despite the fact Plaintiff filed the Objection without leave of court, and will consider whether JAJ has waived its right to argue lack of personal jurisdiction.

### b. *Whether JAJ waived its right to argue lack of personal jurisdiction*

Between his Objection and his Response to the Motion to Strike, Plaintiff argues JAJ waived its right to argue the Court lacks jurisdiction over it for two reasons, one procedural and one substantive. Procedurally, Plaintiff contends JAJ waived its right under the Federal Rules of Civil Procedure. Substantively, Plaintiff claims JAJ waived its right by participating in this case. The Court will address each in turn.

### i. *Whether JAJ waived the defense under Fed. R. Civ. P. 12(h)*

As discussed, Rule 12(h) provides that a defendant waives lack of personal jurisdiction as a defense if it is not included in an answer or a pre-answer motion. Fed. R. Civ. P. 12(h)(1). Plaintiff argues that because JAJ "failed to challenge personal jurisdiction" in its answer and was not a party to the First Motion to Dismiss, JAJ waived the defense. (Doc. 192 at 3). JAJ counters that it denied Plaintiff's jurisdictional allegation, which was enough to include it in its responsive pleading under Rule 12(h). (Doc. 211 at 4-5).

In a thorough opinion, United States District Judge James O. Browning wrote that denying a jurisdictional allegation is sufficient to preserve a personal jurisdiction defense. *Fabara v. GoFit, LLC*, 308 F.R.D. 380 (D.N.M. 2015). Judge Browning concluded as much for three reasons. First, lack of personal jurisdiction is not an affirmative defense under the Federal Rules of Civil Procedure and other authorities. *Id.* at 399; *see* Fed. R. Civ. P. 12(c). Second, courts that have considered the issue agree that denying jurisdiction is sufficient to preserve the defense. *Id.* (discussing cases). Finally, "forcing

defendants to plead lack of personal jurisdiction as an affirmative defense would elevate form over substance and contravene the federal rules' liberal pleading philosophy." *Id.* at 400. Accordingly, because the defendant in *Fabara* denied jurisdiction was appropriate in its answer, the defendant preserved the defense under Rule 12(h). *Id.*

Here, just as in *Fabara*, JAJ denied Plaintiff's jurisdictional allegation in its answer. (Doc. 93 at 2). Plaintiff claims JAJ failed to assert a jurisdictional challenge because JAJ did not mention Rule 12 or mention lack of personal jurisdiction. Following *Fabara*'s reasoning though, JAJ was not required to state lack of personal jurisdiction as an affirmative defense or otherwise formally plead it. The Court therefore finds that JAJ adequately preserved its personal jurisdiction defense in its answer by denying Plaintiff's jurisdictional allegation.

### ii. *Whether JAJ waived the defense through its conduct*

Plaintiff also argues that JAJ has implicitly waived its defense through its conduct in this case. Specifically, Plaintiff contends JAJ forfeited its defense by waiting eleven months to file the Motion, participating in discovery, and not repeating its denial of jurisdiction in its discovery responses. (Doc. 215 at 10-12). Plaintiff contrasts this case with *Fabara*, where the defendant filed a motion to dismiss three months after filing its answer, asserted the defense in the Joint Status Report, and did not participate in discovery. *Fabara*, 308 F.R.D. at 400. Plaintiff also cites *Schwartz v. M/V Gulf Supplier*, 116 F.Supp.2d 831 (S.D.Tex. 2000), for the proposition that delay as short as nine months is sufficient to find implicit waiver. (Doc. 93 at 12).

Actively participating in a case implicitly waives a jurisdictional objection when participation "manifests an intent to submit to the court's jurisdiction." *Yeldell v. Tutt*, 913

F.2d 533, 539 (8th Cir. 1990). Participation includes engaging in discovery, taking part in settlement conferences, and filing and opposing motions for relief on the merits. *See id.*; *see also Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2nd Cir. 1999); *Bel-Rey Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443-444 (3rd Cir. 1999). How long a defendant takes to file a motion to dismiss is a factor, but "the passage of time alone is generally not sufficient to indicate forfeiture." *Hamilton*, 197 F.3d at 61. Rather, "the time period provides the context in which to assess the significance of the defendant's conduct." *Id.* Courts have placed particular weight on a defendant's request for relief on the merits. *See Bel-Rey Co.*, 181 F.3d at 443-444 (defendant moved for summary judgment on its counterclaim); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993) (defendants filed and defended motions related to counterclaims); *Yeldell*, 913 F.2d 533 at 539 (defendant did not assert lack of personal jurisdiction until after trial); *cf. Thompson v. United States*, 312 F.2d 516, 519-20 (10th Cir. 1962) (holding appellant waived improper venue defense by filing a motion for summary judgment).

In this case, JAJ has participated in discovery, which weighs in favor of finding waiver. Additionally, JAJ did not reassert its lack of jurisdiction defense in the Joint Status Report or other discovery responses, which the court found persuasive in *Fabara*. 380 F.R.D at 400; *see also Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 Fed. Appx. 376, 380-81 (5th Cir. 2004) (unpublished). On the other hand, JAJ has not filed any counterclaims, requested relief on the merits, or taken part in any settlement conferences. JAJ filed the Motion nearly one year after asserting its lack of personal jurisdiction defense, but JAJ did so after jurisdictional discovery provided evidence supporting its denial that jurisdiction is appropriate. In context, this conduct and delay

does not manifest intent to submit to the Court's jurisdiction. Accordingly, the Court finds JAJ did not waive its personal jurisdiction defense through its conduct in this case.

Plaintiff emphasizes that the District Court for the Southern District of Texas found waiver after only nine months' delay. (Doc. 215 at 11-12) (citing *Schwartz*, 116 F.Supp.2d at 835). But, the delay itself was not what was significant in *Schwartz*. Rather, the court found the defendant waived its defense by raising it "in a dilatory manner . . . on the eve of trial." *Schwartz*, 116 F.Supp.2d at 835. The court recognized that nine months "may not be a long time in many courts," but its "average trial track is less than nine months." *Id.* at 835 n.1. No trial is set in this case; in fact, the parties are still completing discovery. (Doc. 219). And again, "the passage of time alone is generally not sufficient to indicate forfeiture." *Hamilton*, 197 F.3d at 61. Despite its participation in discovery, the Court does not find that JAJ has implicitly conceded jurisdiction and thereby waived its defense.

### c. *Whether the Court has personal jurisdiction over the Reeves Defendants*

#### i. *Burden of Proof*

Having determined that JAJ has not waived its jurisdictional defense, the Court must now consider whether it has jurisdiction over it and the rest of the Reeves Defendants. Plaintiffs bear the burden of proving jurisdiction when it is contested. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citation omitted). When a court does not have personal jurisdiction over defendants, it must dismiss the claims against those defendants without prejudice. *See Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004) ("In cases where the district court has determined that it lacks jurisdiction, dismissal of a claim must be without prejudice."); *Walker v. THI of N.M. at Hobbs Center*, 801 F. Supp. 2d 1128, 1140-41 (D.N.M. 2011).

When a motion to dismiss for lack of personal jurisdiction is decided on affidavits and other written materials, plaintiffs must make a prima facie showing that jurisdiction exists, which is a "light" burden. *Id.* (citation omitted). This means plaintiffs must present facts that, if true, establish jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 1479 F.3d 1086, 1091 (10th Cir. 1998). If plaintiffs make a prima facie showing of jurisdiction, "defendants must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Factual disputes must be resolved in plaintiffs' favor when the parties present conflicting affidavits, and a prima facie showing is sufficient notwithstanding defendants' contrary evidence. *Wenz*, 55 F.3d at 1505. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992). However, only well pled facts must be taken as true, as opposed to conclusory allegations. *Wenz*, 55 F.3d at 1505. Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Finally, plaintiffs must show that exercising jurisdiction is sanctioned by the state's long-arm statute and is consistent with due process under the Fourteenth Amendment. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *United Nuclear Corp. v. General Atomic Co.*, 1977-NMSC-079, ¶ 2, 91 N.M. 41, 570 P.2d 305. The Court therefore does not need to

conduct a statutory analysis separate from its due process analysis. *Marcus Food Co.*, 671 F.3d at 1166.

ii. <u>Personal Jurisdiction and Due Process</u>

In order to exercise personal jurisdiction over a defendant, due process first requires that the defendant have sufficient "minimum contacts" with the forum state such that the defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-76 (1985). For example, a defendant should reasonably anticipate litigation in a forum state when the defendant has "purposefully directed" its activities at residents of the forum and the litigation arises from or relates to those activities. *Id.* at 472. Jurisdiction in this context is called specific jurisdiction. *Daimler A.G. v. Bauman*, 134 S. Ct. 746, 755 (2014). General jurisdiction, by contrast, is jurisdiction over litigation that does not arise from a defendant's contacts with the forum state. *See id.* at 880-81. A defendant has minimum contacts necessary for general jurisdiction when the defendant's contacts with the forum state are "so 'continuous and systematic' so as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

If a defendant has minimum contacts with a forum state, due process then requires that exercising jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted); *see OMI Holdings*, 149 F.3d at 1091; *Fabara*, 308 F.R.D. at 406 ("Because the Court found minimum contacts lacking, it is unnecessary to proceed to the second step of the due process analysis."). Courts typically consider five factors in making this determination: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the

14

plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the case; and (5) a shared interest in promoting public policy. *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008); *Zavala v. El Paso Cty. Hosp. Dist.*, 2007-NMCA-149, ¶ 12, 143 N.M. 36, 172 P.3d 173.

### iii. <u>Whether the Court has Specific Jurisdiction</u>

Specific jurisdiction exists when the defendant has "purposefully directed" activities at residents of the forum state and the litigation "arise[s] out of or relate[s] to" those activities. *Burger King Corp.*, 471 U.S. at 472 (internal citation and quotation omitted). In the tort context, a defendant purposefully directs its activity at the forum state when it: (1) takes an intentional action; (2) the action was "expressly aimed" at the forum state; and (3) the action was taken with the knowledge that "the brunt of the injury" would be felt in the forum state. *Dudnikov*, 514 F.3d at 1072 (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). Random, fortuitous, or attenuated contacts are insufficient for specific jurisdiction, as are contacts which result from the unilateral actions of a third party. *Id.* at 475 (quotation and citation omitted).

In this case, the tar lugger at issue came into New Mexico after C. Ortiz went into Texas, purchased the tar lugger, and brought it into New Mexico. This case therefore arises from the unilateral actions of a third party, rather than any action by the Reeves Defendants. Even assuming the Reeves Defendants purposefully directed activity at New Mexico by selling roofing products, this litigation does not arise out of that activity. To the extent any of the Reeves Defendants took intentional actions by designing, manufacturing, and selling the tar lugger that contributed to Plaintiff's injuries, Plaintiff has

not shown those actions were aimed at New Mexico or undertaken with the knowledge that any injury would be felt in New Mexico. Accordingly, the Court finds it does not have specific jurisdiction over the Reeves Defendants.

Plaintiff asserts the Reeves Defendants are subject to specific jurisdiction under a "stream of commerce" theory. Specifically, Plaintiff argues the Reeves Defendants sold the tar lugger involved in this case with the "intent, expectation, and desire" that it would reach New Mexico through the stream of interstate commerce. (Doc. 171 at 16). As discussed, specific jurisdiction lies when a defendant purposefully directs his activities at a forum state. One way a defendant may do so is by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 197-98 (1980). However, Plaintiff has not produced or cited any evidence that the Reeves Defendants intended, expected, or desired that the tar lugger in this case would find its way into New Mexico. Even if Plaintiff produced such evidence, Supreme Court precedent shows that a single sale of an accident-causing product in a different state is insufficient to establish minimum contacts for specific jurisdiction. *See World-Wide Volkswagen*, 444 U.S. at 197-98 (holding insufficient contacts with Oklahoma where automobile sold in New York was involved in accident in Oklahoma); *J.McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 888 (2011) (Breyer, J., concurring in the judgment) ("The Court has held that a single sale to a customer who takes an accident-causing product to a different state (where the accident takes place) is not a sufficient basis for asserting jurisdiction.") (citing *World-Wide Volkswagen*). Accordingly, the Court finds no specific jurisdiction under a stream of commerce theory.

*iv.   Whether the Court has General Jurisdiction*

Contrary to specific jurisdiction, general jurisdiction is jurisdiction over a defendant that does not relate to the defendant's contacts with the forum state. *Dudnikov*, 514 F.3d at 1078. A corporation's place of incorporation and principal place of business are the "paradigm" states in which general jurisdiction is appropriate. *Daimler A.G.*, 134 S. Ct. at 760. In order to establish general jurisdiction in a different state, a defendant's contacts with the state must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the state." *Goodyear*, 564 U.S. at 919.

Commercial contacts "must be of a sort 'that approximate physical presence' in the state. *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) (quoting *Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)). For instance, a Philippine mining company was subject to general jurisdiction in Ohio after the company operated out of a home there during World War II. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447-49 (1952). Simply "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters*, 223 F.3d at 1086. Rather, general jurisdiction is rare "absent substantial sales." *Shrader*, 633 F.3d at 1243. Courts in the Tenth Circuit evaluate four factors to assist in deciding whether to exercise general jurisdiction over a corporation: (1) whether the corporation solicits business in the state through local offices or agents; (2) whether the corporation sends agents into the state to solicit business regularly; (3) the extent to which the corporation holds itself out as doing business in the forum state, e.g. through advertisements, listings, or bank accounts; and (4) the volume of

business conducted in the forum state. *Trierweiler v. Croxton*, 90 F.3d 1523, 1533 (10th Cir. 1996).

In this case, JAJ sold its products to New Mexico residents, both directly and through Albuquerque Equipment. However, these sales were a small part of JAJ's business: between October 2011, and August 2012, sales to New Mexico customers were under .05% of JAJ's total sales. (Doc. 167-7 at 7-8). In dollar amounts, JAJ made sales totaling $5,061 to Albuquerque Equipment, $744 to The Flashing Company, $220.50 to L&P Building Supply, and $236 to Reed Roofing and Construction. (Doc. 167-7 at 7-8). Although JAJ had a close enough relationship with Albuquerque Equipment to consider them a distributor, JAJ did not sell to Albuquerque Equipment every year. (Doc. 167-1 at 7). JAJ's other contacts with New Mexico residents included speaking with their customers on the phone, providing brochures of their products to Albuquerque Equipment, and emailing Albuquerque Equipment as part of a mass email list. (Doc. at 167-1 at 4-9). The other Reeves Defendants' contacts with New Mexico arose solely through their relationship with JAJ. In this regard, JNR, as JAJ's sole shareholder and landlord, had no contacts with New Mexico at all.

To the extent the Reeves Defendants' commercial contacts with New Mexico were systematic and continuous, they were not so systematic and continuous such that they were "at home" or physically present in New Mexico. On the contrary, their sales and other contacts were infrequent and irregular, and certainly not substantial. *Shrader*, 633 F.3d at 1243. Although the Reeves Defendants had commercial relationships with New Mexico residents, "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence with the state's borders."

*Bancroft*, 223 F.3d at 1086. Here again, none of the Reeves Defendants' contacts with New Mexico were so substantial that they were effectively physically present in New Mexico.

Furthermore, the *Trierweiler* factors are unavailing for Plaintiff. First, as discussed, JAJ did not solicit business through its own local offices or agents. Albuquerque Equipment was JAJ's distributor, and if customers called JAJ directly, they would refer the customers to Albuquerque Equipment. Similarly, regarding the second factor, JAJ never sent representatives to New Mexico to solicit business. Third, JAJ did not significantly hold itself out as doing business in New Mexico. JAJ's only advertisement directed at New Mexico was providing Albuquerque Equipment with a brochure of their products. Finally, JAJ conducted very little business in New Mexico, both in terms of dollar amount and as a proportion of their total sales. On the whole, these factors weigh against finding general jurisdiction. The Court therefore finds that the Reeves Defendants do not have sufficient minimum contacts to exercise general jurisdiction over them.

### III. Conclusion

For the foregoing reasons, the Court finds that although Plaintiff filed the Objection without leave, the Court will deny the Motion to Strike. Still, the Court finds that JAJ did not waive its personal jurisdiction defense and that none of the Reeves Defendants have sufficient minimum contacts with New Mexico to exercise personal jurisdiction over them. Because none of the Reeves Defendants have sufficient contacts with New Mexico, the Court need not consider Plaintiff's alter-ego argument or whether exercising jurisdiction would offend traditional notions of fair play and substantial justice.

**IT IS THEREFORE ORDERED** that the Reeves Defendants' *Motion to Strike or Disregard Plaintiff's "Objection" to Their Motion to Dismiss*, (Doc. 211), is **DENIED**; and

**IT IS FURTHER ORDERED** that the Reeves Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction*, (Doc. 167), is **GRANTED** and Plaintiff's claims against the Reeves Defendants are **DISMISSED WITHOUT PREJUDICE**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE