IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

REFUGIO RAMOS,

    Plaintiff,

v.        CV No. 15-980 CG/KRS

FOAM AMERICA, INC., et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants Great Northern Holding, LLC and Harrisonville Equipment Company's Motion for Summary Judgment* (the "Motion"), (Doc. 173), filed September 6, 2017; *Plaintiff's Response to Defendants Great Northern Holding, LLC and Harrisonville Equipment Company's Motion for Summary Judgment* (the "Response"), (Doc. 178), filed September 19, 2017; and *Defendants Great Northern Holding, LLC and Harrisonville Equipment Company's Reply in Support of Their Motion for Summary Judgment* (the "Reply"), (Doc. 180), filed October 2, 2017. This matter is also before the Court on *Plaintiff's Unopposed Motion to Exceed Exhibit Page Limits in His Response*, (Doc. 177), filed September 19, 2017. On January 5, 2018, the parties consented to the undersigned to preside over this case. (Doc. 210). Having considered the briefs, the record of the case, and relevant law, Plaintiff's motion to exceed page limits, (Doc. 177), and *Defendants Great Northern Holding, LLC and Harrisonville Equipment Company's Motion for Summary Judgment*, (Doc. 173), are **GRANTED**, and Plaintiff's strict liability and negligence claims against Defendants Great Northern Holding and Harrisonville Equipment Company are **DISMISSED**.

## I. Background[1]

On November 19, 2013, Plaintiff was performing work on a commercial roofing job for Defendant C. Ortiz Corporation ("C. Ortiz") at the White Sands Missile Range, a federal enclave in New Mexico. (Doc. 85 at 4); (Doc. 178 at 2); (Doc. 48 at 8). The "tar lugger" being used for the job overturned, spraying and burning Plaintiff with hot tar. *Id.* The tar lugger was manufactured and produced by Defendant Reeves Roofing Equipment Co., Inc. ("Reeves"), and was purchased by C. Ortiz from a third party approximately ten years before the incident. (Doc. 173 at 3, ¶¶ 1-2); (Doc. 173-1 at 2). C. Ortiz does not have a bill of sale or any inspection, testing, maintenance, or repair records for the tar lugger. (Doc. 173 at 3-4, ¶¶ 2-3). On October 15, 2012, Defendant Great Northern Holding, LLC (d/b/a Great Northern Building Products) ("Great Northern") and Reeves entered into an Asset Purchase Agreement in which Reeves sold its assets to Great Northern. *Id.* at 4, ¶ 3. On January 1, 2014, Great Northern assigned all of the assets it acquired from Reeves to Defendant Harrisonville Equipment Company ("HECO"). *Id.* at 4, ¶ 7.

In his Amended Complaint, Plaintiff brings the following claims against Great Northern and HECO: (1) strict liability; (2) negligence; and (3) reckless, willful, and wanton conduct. (Doc. 85 at 5-6). Plaintiff contends Great Northern and HECO are liable under these theories because: the tar lugger was in an unreasonably dangerous condition as designed, manufactured, marketed, assembled and/or placed into the stream of commerce; Great Northern and HECO issued no warnings or instructions to potential users regarding such dangers, or any warnings issued were inadequate; and

---

[1] The following is a general statement of background facts. Any material disputed facts are discussed *infra*. The Court views all facts relevant to this motion in the light most favorable to the non-moving party.

Great Northern and HECO failed to train workers regarding the dangers of the tar lugger, allowed laborers to be exposed to the extreme danger of working with the tar lugger, and knew or should have known that there was a substantial likelihood that employees would suffer serious injury or death. *Id.*

Great Northern and HECO contend they are entitled to summary judgment on Plaintiff's strict liability claim because they did not supply and had no connection to the tar lugger at issue. (Doc. 173 at 5-6). Great Northern and HECO further claim they are not liable as successors to Reeves because they never produced or marketed Reeves tar luggers and they did not assume Reeves' liabilities. *Id.* at 6-8. Finally, Great Northern and HECO contend Plaintiff's negligence claim against them fails because Great Northern and HECO do not have a sufficient connection with Plaintiff or the allegedly defective tar lugger to create a duty to warn. (Doc. 173 at 5-9). Great Northern and HECO have not contested Plaintiff's claim for reckless, willful, and wanton conduct.

In his Response, Plaintiff states there are genuine issues of material fact regarding whether Great Northern and HECO are liable as successors to Reeves. (Doc. 178 at 1). Specifically, Plaintiff contends that Great Northern and HECO added the tar lugger product line to their roofing products, they continued to market and advertise the Reeves tar lugger and the parts necessary to repair it, and customers who ordered a Reeves tar lugger from Great Northern and HECO expected to receive a product from Reeves. *Id.* at 5-6. Therefore, Plaintiff argues Great Northern and HECO are culpable under a successor liability theory.

In their Reply, Great Northern and HECO state that they have never placed Reeves tar luggers into the stream of commerce and that their tar luggers are distinct

3

products from Reeves tar luggers. (Doc. 180 at 2-4). They further contend that Plaintiff failed to specifically controvert Defendants' material facts and that the testimony Plaintiff relies on for his contentions was taken out of context. *Id.* at 4-5. Great Northern and HECO maintain they are not liable under a successor-liability theory, did not have a duty to warn, and ask the Court to dismiss Plaintiff's strict liability and negligence claims against them. *Id.* at 5-9.

II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). In considering a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence

on an essential element of the claim. *Id.* at 671. If the movant satisfies its burden, the burden shifts to the non-movant. *Id.*

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

III. **Analysis**

   A. *Strict Products and Successor Liability*

Under New Mexico law, a strict products liability claim requires the plaintiff to prove the following elements: (1) the product was defective; (2) the product was defective when it left the hands of the defendant and was substantially unchanged when it reached the user or consumer; (3) because of the defect, the product was unreasonably dangerous to the user or consumer; (4) the consumer was injured or damaged; and (5) the defective product was the proximate cause of the injury or

5

damage. *Garner v. Raven Indus., Inc.*, 732 F.2d 112, 114 (10th Cir. 1984).[2] For a strict products liability claim, "a supplier in the business of putting a product on the market is liable for harm caused by an unreasonable risk of injury resulting from a condition of the product or from a manner of its use." UJI 13-1406 N.M.R.A. "The purpose behind the strict products liability doctrine is to allow an injured user or consumer to recover against a supplier or manufacturer without the requirement of proving negligence." *Trujillo v. Berry*, 1987-NMCA-072, ¶ 5, 738 P.2d 1331.

Plaintiff does not dispute that Reeves, not Great Northern or HECO, manufactured and sold the tar lugger at issue. (Doc. 178 at 6). However, Plaintiff contends that Great Northern and HECO are liable as successors to Reeves. *Id.* at 7-8. The general rule under New Mexico law is that a successor corporation does not automatically acquire the liabilities or obligations of the transferor corporation. *Garcia v. Coe Mfg. Co.*, 1997-NMSC-013, ¶ 11, 933 P.2d 243. Four traditional exceptions to this rule exist where: (1) there is an agreement to assume those obligations; (2) the transfer results in a consolidation or merger; (3) there is a continuation of the transferor corporation; or (4) the transfer is made for the purpose of fraudulently avoiding liability. *Id.*, ¶ 12. Additionally, New Mexico recognizes the "product line" exception to the rule of successor non-liability. *Id.*, ¶¶ 13, 21.

### 1. De Facto *Merger*

Plaintiff does not contend that any of the four traditional exceptions to the rule of successor non-liability apply in this case. Instead, Plaintiff contends that Great Northern

---

[2] Because the White Sands Missile Range is located within the borders of the State of New Mexico, New Mexico law supplies the parties' substantive rights in this case. 28 U.S.C. § 5001 ("In a civil action brought to recover on account of an injury sustained [on a federal enclave], the rights of the parties shall be governed by the law of the State in which the place is located.").

6

and HECO are liable as successors under the *de facto* merger and product line exceptions. (Doc. 178 at 8-22). The *de facto* merger exception is different from the traditional merger exception because the traditional exception applies where there is an explicit merger, but "[a] *de facto* merger occurs when a transaction, although not in form a merger, is in substance a consolidation of seller and purchaser." *Cargo Partner AG v. Albatrans, Inc.*, 342 F.3d 41, 45 (2nd Cir. 2003). Courts have explained that the *de facto* merger exception is different from the traditional merger exception because it is based in equity and is designed to look behind the contract. *See, e.g., Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 465 (3rd Cir. 2006).

New Mexico has not explicitly recognized *de facto* merger as one of the exceptions to the general rule that a successor does not acquire the liabilities or obligations of the transferor corporation. *See generally, Garcia*, 1997-NMSC-013, ¶¶ 12-13, 21 (setting forth the exceptions to successor non-liability recognized by New Mexico). Nevertheless, the factors used to determine *de facto* merger are similar to the factors used to determine the third traditional exception to the rule of successor non-liability—continuation of the corporation—which is recognized in New Mexico. *See Berg*, 435 F.3d at 468 (treating the *de facto* merger and continuation exceptions identically, stating "[t]he *de facto* merger exception is similar to the continuation exception, save that the latter focuses on situations in which the purchaser is merely a restructured or reorganized form of the seller"). Therefore, the Court will consider whether the facts of this case satisfy the *de facto* merger or continuation exceptions.

The continuation exception to successor non-liability applies where there is: (1) a continuity of directors, officers, and shareholders; (2) continued existence of only one

7

corporation after sale of the assets; and (3) inadequate consideration for the sale of the assets. *Garcia*, 1992-NMSC-013, ¶ 13. A *de facto* merger exists when there is: (1) continuity of management, employees, location, and assets; (2) continuity of shareholders; (3) the seller ceases operations and dissolves soon after the transfer; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business. *Wessinger v. Vetter Corp.*, 685 F.Supp. 769, 773 (D. Kan.1987); 19 Am. Jur. 2d *Corporations* § 2719 (1986). In support of his contention that the *de facto* merger exception applies, Plaintiff relies on the following facts: Great Northern purchased everything Reeves had; Great Northern and HECO continued to use the Reeves name and contact information to sell Reeves products and conduct business; Great Northern and HECO required Joe Reeves, John Reeves, and Amy Reeves to work for them; Amy Reeves remained in the same office in the same location she had worked prior to the acquisition of Reeves, and it was her job to maintain Reeves' customer base; neither Reeves nor Great Northern notified their customers, creditors, or suppliers about the acquisition; and, post-sale, Reeves changed its name and ceased performing any business. (Doc. 178 at 8-14).

"The key element of a continuation is a common identity of officers, directors and stockholders in the selling and purchasing corporations," and the "continuation exception has no application without proof of continuity of management and ownership between the predecessor and successor corporations." *Garcia*, 1997-NMSC-013, ¶ 13 (citing *Leannis v. Cincinnati, Inc.*, 565 F.2d 437, 440 (7th Cir. 1977)). The facts of this case do not demonstrate continuity of management, ownership, or shareholders from Reeves to Great Northern and HECO. While three of the Reeves family members

continued as employees of Great Northern and HECO, they did not remain as officers, directors, or shareholders after the sale. In addition, there are no facts before the Court showing there was inadequate consideration for the sale of Reeves' assets, and Great Northern and HECO did not assume the liabilities and obligations of Reeves' business. *See* (Doc. 173-1 at 9, ¶ 7) (Sales Contract: "Buyer is not assuming any liabilities or obligations of Seller and Seller shall be responsible for any warranty or other claims relating to the Purchased Assets arising out of any product produced or sold by Seller."). Therefore, the Court finds that the facts of this case do not meet either the continuation or *de facto* merger exceptions to the rule of successor non-liability.

### 2. Product Line Exception

Next, Plaintiff contends that the product line exception to the rule of successor non-liability applies in this case. (Doc. 178 at 14-22). In *Garcia*, the New Mexico Supreme Court adopted the product line exception to the rule of successor non-liability, stating: "We believe the rationale underlying [the product line exception] is the necessity of protecting an injured person who may be left without a remedy if the predecessor has dissolved, is defunct, or is otherwise unavailable to respond in damages." 1997-NMSC-013, ¶ 15. The court held that the product line exception applies when "the successor continues to produce and market the same product, using the same designs, equipment, and name." *Id.*, ¶ 17. The court relied on a California Supreme Court decision, *Ray v. Alad Corp.*, 560 P.2d 3 (Cal. 1977), which applied the product line exception where a successor had acquired the plant, equipment, inventory, trade name, and goodwill of a ladder manufacturer, and continued to manufacture the same line of ladders. *Id.*, ¶ 18. The Court also relied on a New Jersey Supreme Court case, *Ramirez*

9

*v. Amsted Indus.*, 431 A.2d 811 (1982), which stated that the focus in considering whether to apply the product line exception "should be on the successor's continuation of the actual manufacturing operation and not on the commonality of ownership and management between the predecessor's and successor's corporate entities." *Id.*, ¶ 19.

Great Northern and HECO argue the product line exception does not apply here because after Great Northern acquired Reeves, instead of continuing the Reeves tar lugger product line, it chose to continue manufacturing and producing the "Panther" tar lugger, which it manufactured prior to its acquisition of Reeves. (Doc. 173 at 5) (citing Doc. 173-1 at 30, 41-42). Great Northern and HECO explain that the Panther lugger has a rolled, cylindrical frame, as opposed to the Reeves lugger which is octagonal, and that Great Northern and HECO have never sold, manufactured, or distributed a Reeves tar lugger. *Id.* Further, they state they have never performed any maintenance or repairs on the tar lugger at issue, and they were unaware that C. Ortiz owned it. *Id.*

In Response, Plaintiff contends the product line exception applies because: Great Northern and HECO acquired the design information for the Reeves tar lugger; Great Northern and HECO added the Reeves tar lugger product line to their roofing products; Great Northern and HECO continued to market the Reeves tar lugger, including parts and repair services; and customers ordering a Reeves tar lugger thought that they would receive a Reeves tar lugger. (Doc. 178 at 5-6, 14-22) (citing Doc. 178-1 at 2-3, 17, 22-23; Doc. 178-3 at 4, 10-11, 14; and Doc. 178-4 at 2). Plaintiff also argues that it is irrelevant that the Reeves and Panther tar luggers have different shapes because Great Northern and HECO still markets the tar luggers as being Reeves tar luggers, and customers ordering a Reeves lugger from Great Northern and HECO

believe they are receiving a Reeves lugger, not a Panther lugger. *Id.* at 20-21. Therefore, Plaintiff argues there are disputed material facts regarding whether Great Northern and HECO continued to manufacture, market, and distribute Reeves tar luggers. *Id.* at 5-6.

First, Great Northern and HECO argue that the testimony Plaintiff relies on for his contention that customers ordering a tar lugger from Great Northern and HECO believed they were receiving a Reeves tar lugger is taken out of context. (Doc. 180 at 4-5). In his Response Plaintiff states: "If a customer contacts Defendants to purchase a Reeves Roofing Equipment Co., Inc. tar lugger, Defendants puts [sic] an [sic] Reeves Roofing Equipment Co., Inc. label on it and sends [sic] the tar lugger to the customer as a **Reeves Roofing Equipment Co., Inc.** tar lugger." (Doc. 178 at 5-6) (citing Doc. 178-1 at 22-23). The deposition testimony Plaintiff relies on for this statement is as follows:

> Q. If the person said I want a Reeves tar lugger and that's a Reeves dealer and I want to sell a Reeves product, what would you do then?
>
> A. If they wanted a Reeves sticker on a piece of that equipment, we'd put a Reeves sticker on it.
>
> Q. Okay. So they --
>
> A. We've never had that situation.

(Doc. 178-1 at 22-23). Therefore, the record does not support a finding that Great Northern and HECO have actually put Reeves stickers on Panther luggers and sent them to customers.

Regardless, even if Great Northern and HECO had sent out Panther luggers with Reeves stickers on them, this does not equate to Great Northern and HECO continuing to manufacture and sell Reeves tar luggers. A pillar principle of the product line

11

exception is that the successor entity must have continued the specific product line at issue. *See Garcia*, 1997-NMSC-013, ¶ 22 (holding that the product line exception applies when "the successor continues to produce and market the same product, using the same designs, equipment, and name"); *Turner v. Mudrick Mach. Works*, 589 F. Supp. 771 (E.D. Pa. 1984) (declining to apply the product line exception where the successor did not continue to manufacture the product line which encompassed the machine that caused the injury); *Fox v. Sunmaster Products, Inc.*, 821 P.2d 502, 508 (Wash. Ct. App. 1991) (declining to apply the product line exception where the successor did not continue to make the product that caused the injury, even though it continued to make its own similar product). Similarly, courts have found that the product line exception does not apply when a successor modifies or improves the subject product's design, or when successors simply manufacture replacement parts. *See, e.g., Farmex Inc. v. Wainwright*, 269 Ga. 548, 501 S.E.2d 802 (1998) (finding the product line exception did not apply where the successor changed the design of the product at issue); *Lundell v. Sidney Machine Tool Co.*, 190 Cal. App. 3d 1546 (Cal. App. 2d 1987) (finding the product line exception did not apply where the successor only supplied replacement parts for the machines at issue). Accordingly, because Great Northern and HECO did not continue to manufacture or sell the Reeves tar lugger, the product line exception does not apply.

Plaintiff relies on *Rawlings v. D.M. Oliver, Inc.*, 97 Cal. App. 3d 890, 894 (Cal. Ct. App. 1979), where the California Court of Appeals rejected the successor corporation's argument that the product line exception should not apply because the successor did not continue to manufacture the predecessor's identical product line. The court

reasoned that "manufacturing activity by its very nature involves modification of a product line or elimination of an unprofitable item," and that "[t]he general business continued by the manufacturer and its ability to spread those costs must be considered and not merely whether a specific line of products was discontinued." *Id.* at 901.

The *Rawlings* decision is not binding on this Court, and is inconsistent with other cases applying the product line exception. *Rawlings* is at odds with the California Supreme Court's decision in *Ray* which, in applying the product line exception, emphasized that the successor corporation continued to produce the same product as the predecessor. *See Ray*, 560 P.2d at 11 (finding successor liability for defects in ladders of the same product line previously manufactured by the predecessor). Importantly, after the decisions in both *Rawlings* and *Ray* were issued, the New Mexico Supreme Court in *Garcia* chose to rely on *Ray* in adopting the product line exception to the rule of successor non-liability. 1997-NMSC-013, ¶ 18 (stating that concerns about adopting the product line exception "may be allayed by application of the principles established in *Ray*"). Therefore, in contrast to *Rawlings*, New Mexico has limited the product line exception to cases where the successor entity continued the specific product line at issue.

In addition, *Rawlings* is distinguishable from this case is several respects. First, before reaching the issue of whether the predecessor's specific product line was continued, the court in *Rawlings* found that the purchase agreement was ambiguous as to whether the successor assumed the liabilities owed to the predecessor's customers. *Id.* at 899. In addition, the court found there was a triable issue of material fact as to whether the plaintiff could still recover from the predecessor, which was a sole

proprietorship where the owner was deceased, and it was unknown whether the plaintiff could pursue the owner's estate. *Id.* at 900. Finally, the court also found that the alleged termination of the predecessor's product line was not supported by the record. *Id.* at 901. In contrast, there is no ambiguity here that Great Northern and HECO did not assume Reeves' liabilities, Plaintiff is not barred from pursuing Reeves, and there is no question that the Reeves tar lugger product line has been terminated. Therefore, the *Rawlings* decision has little persuasive effect on the Court's findings.

Despite evidence that Great Northern and HECO acquired the Reeves tar lugger design information, used marketing materials that included the Reeves tar lugger, and did not notify customers that they were buying a Panther lugger instead of a Reeves lugger, the fact remains that Great Northern and HECO did not actually manufacture, sell, repair, or service Reeves tar luggers. While the Court is sympathetic to Plaintiff's injuries and his claim that he was injured by a tar lugger that is similar to the one made by Great Northern and HECO, the Court cannot follow an out-of-circuit, outlier decision to expand the limits of the product line exception. In *Garcia*, the New Mexico Supreme Court noted that many courts had previously rejected the product line exception to the rule of successor non-liability, and thus emphasized that it was limiting the exception to cases where a successor continues to produce the "same product, using the same designs, equipment, and name." 1997-NMSC-013, ¶ 22. Therefore, the Court finds that the product line exception does not apply here because Great Northern and HECO did not continue to manufacture or sell the same product that injured Plaintiff.

Additionally, the Court finds that applying the product line continuation exception in this case would violate the express rationale underlying this exception, which is to

protect an injured person who may be left without a remedy if the predecessor is not available to respond to a law suit. 1997-NMSC-013, ¶ 15. Here, Reeves continued to exist after it was sold to Great Northern, albeit under a different name. *See* (Doc. 178-3 at 2) (deposition testimony of Cynthia Reeves Perry explaining that Reeves requested a name change to JAJ Equipment, Inc. ("JAJ") after Reeves was sold to Great Northern, and that JAJ retained the same officers and shareholders as Reeves). The fact that Reeves has appeared in this lawsuit as JAJ and has vigorously defended its interests demonstrates that the acquisition of Reeves by Great Northern did not result in an inability of Plaintiff to proceed against Reeves.[3] As such, the policy behind the product line exception is not satisfied here.

Based on the foregoing, Great Northern and HECO have made a prima facie showing that they are entitled to summary judgment on Plaintiff's strict liability claim, and Plaintiff has not carried his burden to demonstrate the existence of a material factual dispute that any of the exceptions to successor non-liability apply. *See Sealock*, 218 F.3d at 1209 (the party opposing summary judgment must "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment"); *Grynberg*, 538 F.3d at 1345 (a fact is disputed in a summary judgment proceeding "only if there is contrary evidence or

---

[3] While the Reeves Defendants have been dismissed from this case because this Court does not have jurisdiction over them, (Doc. 220), courts have emphasized that the product line exception should apply when the purchase of the predecessor by the successor directly caused the inability of the plaintiff to proceed against the predecessor. *See Kline v. Johns-Manville*, 745 F.2d 1217, 1218-20 (9th Cir. 1984) (declining to apply the product line exception even though the predecessor corporation was in bankruptcy because the asset transfer did not cause the plaintiff's inability to proceed against the predecessor); *Schmid v. Roehm GmbH*, 544 F. Supp. 272 (D. Kan. 1982) (declining to apply the product line exception when, following the asset transfer, the predecessor company continued to operate as a viable company); *Rivera v. Zia Park, LLC*, No. 30,519, 2010 WL 4923959, at *3 (N.M. Ct. App. Sept. 8, 2010) (finding the policy behind the product line exception was not met even though the plaintiff's claims against the predecessor were barred by the statute of limitations, explaining "we are unaware of any case law that would allow Plaintiff to proceed against Defendant merely because her claims against the proper party are barred by the expiration of the limitations period").

other sufficient reason to disbelieve it"). Therefore, Plaintiff's strict liability claim against Great Northern and HECO shall be dismissed.

### B. Great Northern And HECO Did Not Have a Duty to Warn

Finally, Great Northern and HECO contend they are entitled to summary judgment on Plaintiff's negligence claim because they did not have a duty to warn of alleged defects of the Reeves tar lugger. (Doc. 173 at 8-10). Plaintiff did not address this argument in his Response.

A negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, and that the breach is a proximate cause and cause in fact of the plaintiff's damages. *Coffey v. United States*, 870 F.Supp.2d. 1202, 1225 (D.N.M. 2012); *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 73 P.3d 181. Negligence is generally a question of fact for the jury. A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant, which is a question of law. *Solon v. WEK Drilling Co.*, 1992-NMSC-023, ¶ 17, 829 P.2d 645 ("It is thoroughly settled in New Mexico, of course, that whether the defendant owes a duty to the plaintiff is a question of law.").

"A corporation that acquires the assets of another does not automatically acquire a duty to warn of alleged defects in its predecessor's products." *Garcia*, 1997-NMSC-013, ¶ 24. Instead, "[s]uch a duty arises only when there is a nexus between the successor corporation, its predecessor's customers, and the allegedly defective product." *Id.* In determining whether a nexus exists, courts consider whether the successor serviced the product, whether the successor knew who owned the product, and whether the successor knew the product suffered from defects. *Id.*, ¶¶ 24-25. In

*Garcia*, the successor corporation assisted in the installation and start-up of the equipment that caused the plaintiff's injuries, agreed to perform all warranty work for the predecessor, and performed at least two items of warranty work on the equipment. *Id.*, ¶ 6. Moreover, the successor corporation sent an employee to inspect the equipment, and the employee found two potentially dangerous defects in the equipment. *Id.* at ¶ 7. Therefore, the New Mexico Supreme Court found there was sufficient evidence to create an issue of fact regarding whether the successor breached its duty to warn of potential safety hazards. *See also Herrod v. Metal Powder Products*, No. 09-4175, 413 Fed. Appx. 7, *13-15 (10th Cir. 2010) (unpublished) (finding the successor corporation had a duty to warn of defects in the predecessor's products because the successor expressly agreed to provide services for maintenance and repair of the products, and the predecessor provided the successor with a list of known product failures).

Here, the evidence before the Court shows that Great Northern and HECO never serviced the tar lugger at issue, had no knowledge of who owned the tar lugger, and had no knowledge that the tar lugger suffered from an alleged defect. *See* (Doc. 173 at 3-4) (Undisputed Material Facts 1, 2, 9, 10, and 11); *see also* (Doc. 173-1 at 30, declaration of Great Northern's CEO). In addition, Great Northern and HECO did not agree to provide maintenance or repair services for Reeves products that had previously been sold. *See* (Doc. 173-1 at 9, ¶ 7) (Sales Contract: "Buyer is not assuming any liabilities or obligations of Seller and Seller shall be responsible for any warranty or other claims relating to the Purchased Assets arising out of any product produced or sold by Seller."). Plaintiff does not dispute any of these facts. *See* (Doc. 178 at 6, ¶ 2) ("SOF Nos. 1, 2, 7, 9, 10, and 11: Neither admit or deny. Plaintiff has no

personal knowledge of information which is within Defendants' possession and control."); *see also Grynberg*, 538 F.3d at 1345 ("A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice."). Therefore, the Court finds that Great Northern and HECO are entitled to summary judgment on Plaintiff's negligence claim.

IV. **Conclusion**

For the reasons stated above, the Court finds that Great Northern and HECO are entitled to summary judgment on Plaintiff's claims for strict products liability and negligence. Plaintiff's claim for reckless, willful, and wanton conduct remains because Great Northern and HECO did not move for summary judgment on that claim. *See* (Doc. 173 at 5-9), (Doc. 180 at 9); *see also O'Toole v. Northrop Grumman Corp.*, 305 F.3d 1222, 1227 (10th Cir. 2002) (the district court erroneously granted summary judgment on all claims on a partial motion for summary judgment because the plaintiff did not have an opportunity to present all of his evidence).

**IT IS THEREFORE ORDERED** that *Plaintiff's Unopposed Motion to Exceed Exhibit Page Limits in His Response*, (Doc. 177), and *Defendants Great Northern Holding, LLC and Harrisonville Equipment Company's Motion for Summary Judgment*, (Doc. 173) are **GRANTED**, and Plaintiff's strict liability and negligence claims against Defendants Great Northern and HECO are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE