**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

REFUGIO RAMOS,

       Plaintiff,

v.                                              CV No. 15-980 CG/KRS

FOAM AMERICA, INC., et al.,

       Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court on Defendant C. Ortiz Corp.'s *Motion for Summary Judgment* (the "Motion for Summary Judgment"), (Doc. 172), filed September 5, 2017; Plaintiff Refugio Ramos's *Unopposed Motion for Extension of Time to File Response to Defendant C. Ortiz Corp.'s Motion for Summary Judgment* (the "Motion for an Extension"), (Doc. 179), filed September 19, 2017; Plaintiff's *Response in Opposition to Defendant C. Ortiz, Corp.'s Motion for Summary Judgment* (the "Response"), (Doc. 182), filed October 2, 2017; Defendant's *Reply to Plaintiff's Response Opposing Defendant C. Ortiz, Corp.'s Motion for Summary Judgment* (the "Reply"), (Doc. 226), filed March 7, 2018; and Plaintiff's *Surreply in Opposition to Defendant C. Ortiz, Corp.'s Reply to Plaintiff's Response Opposing Defendant C. Ortiz, Corp.'s Motion for Summary Judgment* (the "Surreply"), (Doc. 233), filed April 18, 2018. Having considered the briefs, record, and relevant law, Plaintiff's Motion for an Extension is **GRANTED**, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's claims against Defendant C. Ortiz, Corp. are **DISMISSED**.

## I. Background[1]

In November 2013, Plaintiff was working on a roofing crew for Defendant on White Sands Missile Range ("WSMR"). (Doc. 182-1 at 6). The job involved removing the old roofing material, placing new insulation, and then mopping hot tar over the new material. *Id.* Defendant's employees were using a "tar lugger" to transport the heated tar on the roof. (Doc. 226-1 at 5). The employees would heat tar to 500 degrees Fahrenheit in a kettle on the ground, then pump the tar up to the lugger on the roof. *Id.* They would then push the lugger around the roof, distributing the tar to be mopped. *Id.* The lugger consists of a drum, which is filled with the hot tar, supported by a frame and three wheels–two wheels on one end and one wheel on the other. (Doc. 182-3 at 1); (Doc. 233 at 107). Fully loaded and equipped, the tar lugger weighs over 700 pounds. (Doc. 233 at 107).

Plaintiff's job was to lay down sheets of insulation while other employees operated the tar lugger and mopped the tar. (Doc. 226-1 at 4). On November 19, 2013, Carlos Ortiz, one of Defendant's owners, was on the roof supervising the workers. (Doc. 182-1 at 8). Defendant's employees at first moved the tar lugger around the roof without incident. (Doc. 226-1 at 11). However, the second time they moved the lugger, one of the wheels struck debris on the roof and the tar lugger tipped and fell over. (Doc. 172-1 at 2); (Doc. 182-1 at 11); (Doc. 226-1 at 3). Some employees tried to pick the lugger up, but they dropped it back down when they saw something was wrong with the wheel. (Doc. 226-1 at 3). Hot tar then began pouring out of the tar lugger, and suddenly tar sprayed out onto Plaintiff, severely burning him. *Id.*; (Doc. 172-1 at 2).

---

1 The facts in this section are taken from the Motion, Response, Reply, Surreply, and attachments to those filings, including deposition testimony. The facts are viewed in the light most favorable to Plaintiff.

At the time of the incident, Plaintiff was a seasoned roofer with over twenty years of total experience and about ten years of experience working around tar luggers. (Doc. 226-1 at 5, 7). Plaintiff stated he worked with tar luggers but did not operate them himself. *Id.* Plaintiff also stated that he was familiar with and qualified to do the job Defendant required him to do, that he never complained to Defendant that the tar lugger was unsafe or that he felt unsafe around it, and that he did not expect tar to spray out of the lugger onto him. *Id.* at 6-7, 9, 12-13.

According to Plaintiff, a week before the incident the tar lugger's wheel had fallen off, and Mr. Ortiz told an employee to fix it. (Doc. 226-1 at 12, 19). Specifically, Plaintiff states that Mr. Ortiz was informed there was a problem with the tire, he ordered the site supervisor to fix the tire, and he asked if the tire had been fixed and was told that it had been fixed. *Id.* at 17, 19-20. Plaintiff stated he never heard Mr. Ortiz or anyone else employed by Defendant order someone to use a defective tar lugger. *Id.* at 20. At Mr. Ortiz' deposition, he stated that he was generally aware that if a tar lugger wheel ran into debris, and if that caused the tar lugger to tip over, tar could come out of the lugger. (Doc. 182-1 at 18). He further stated that he had never seen that happen. *Id.*

Plaintiff brought claims against Defendant for negligence and reckless, willful, and wanton conduct. (Doc. 85 at 5-6). Plaintiff alleged that Defendant owed Plaintiff a duty that it breached, which proximately caused Plaintiff's injuries. *Id.* at 5. Plaintiff also alleged that Defendant recklessly, willfully, and wantonly failed to train its employees on the dangers of the tar lugger, and exposed them to the extreme danger of working with the tar lugger. *Id.* at 5-6. Further, Plaintiff claimed that Defendant knew or should have

known that there was a substantial likelihood that its employees faced serious injury or death by working with the tar lugger without training. *Id*.

## II. Defendant's Motion for Summary Judgment

In its Motion, Defendant argues Plaintiff's claims are barred based on the exclusivity provisions of the New Mexico Workers' Compensation Act (the "NMWCA"), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2016). (Doc. 172 at 3-8). Under the NMWCA, workers' compensation is a worker's exclusive remedy for injuries resulting from an accident at work. NMSA 1978, §§ 52-1-6(E), 52-1-9 (1990). "Non-accidental" injuries are exempted from the NMWCA, but Defendant maintains that Plaintiff cannot show the incident was not an accident under New Mexico law.

In his Response, Plaintiff contends that his claims are not barred by the NMWCA because he has successfully raised a *Delgado* claim. (Doc. 182 at 1-5). A *Delgado* claim constitutes an exception to the general rule that prevents workers from recovering damages for injuries suffered during the course of employment. *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 26, 131 N.M. 272, 34 P.3d 1148. *Delgado* requires a plaintiff to prove that (a) an intentional act or omission by an employer (b) that a reasonable person would expect to injure the worker (c) actually did—either directly or proximately—injure the worker. *Id.* Plaintiff argues that Defendant intentionally provided its workers with a defective tar lugger, failed to clear a safe path for the tar lugger, and failed to properly train and supervise its workers, and that those actions were reasonably expected to injure Plaintiff. (Doc. 182 at 5). Plaintiff further contends that Defendant either expected its intentional acts and omissions to cause Plaintiff's injuries or utterly disregarded the consequences, and as a result, Plaintiff was

injured by the molten tar. *Id.* Plaintiff attached an affidavit to his Response, which explains his version of events. (Doc. 182-7 at 1-2).

In its Reply, Defendant argues that the facts of this case do not overcome the NMWCA's exclusivity provisions. (Doc. 226 at 1-3). Defendant contends its conduct was not intentional because Defendant had ordered the defective tire on the tar lugger to be fixed, and then followed up by asking if the tire had been fixed. *Id.* at 6-7. Defendant relies on Plaintiff's testimony that he did not hear his supervisor or any of Defendant's employees order someone to use a defective tar lugger. *Id.* at 7. For these reasons, Defendant argues that Plaintiff's injuries were accidental as a matter of law, and it is entitled to summary judgment. *Id.*

In addition, Defendant objected to Plaintiff's affidavit as not properly authenticated under Rule 901 of the Federal Rules of Evidence because it was written in English. *Id.* at 1. Defendant states that Plaintiff does not speak English and he could not read or remember what the affidavit said at his deposition. *Id.* Defendant, therefore, objects to the affidavit because it was not accompanied by a certificate of translation or other evidence that Plaintiff understood the affidavit before he signed it. *Id.*

In his Surreply, Plaintiff maintains that Defendant's acts and omissions were intentional. (Doc. 233 at 3-10). Plaintiff reiterates that Defendant intentionally provided its employees with a dangerous and defective tar lugger, intentionally failed to ensure the tar lugger and roof were safe, and intentionally failed to properly supervise or train its employees. *Id.* at 5. Plaintiff also argues that summary judgment is inappropriate because there are genuine disputes of material fact relating to the egregiousness of Defendant's conduct. *Id.* at 9.

Regarding his affidavit, Plaintiff attached two affidavits from Plaintiff's counsel's employees. The employees state they are fluent in English and Spanish, and that they each translated the affidavit into Spanish and read it to Plaintiff. *Id.* at 102-03, 109-10. One of the employees states he made sure Plaintiff understood the affidavit by answering any questions Plaintiff had. *Id.* at 109-10. Plaintiff argues this is sufficient to show the Court that he understood his declarations and that the affidavit is a true and accurate translation. *Id.* at 2. Plaintiff also argues this issue is moot because he has now testified to the same matters at his deposition, which both parties have cited extensively. *Id.*

### III.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could have an effect on the outcome of the suit under the governing law. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). In considering a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When that party does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the movant satisfies its burden, the burden shifts to the non-movant. *Id.*

The party opposing summary judgment cannot rest on the pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must "set forth specific facts" from which a rational trier of fact could find in the non-movant's favor, identifying those facts in affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671 (internal quotation marks omitted). The party cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

## IV. Analysis

### A. *Plaintiff's Affidavit*

The Court first addresses Defendant's objection to Plaintiff's affidavit. As discussed, Defendant objected to the affidavit as not properly authenticated under Rule

901 of the Federal Rules of Evidence, which requires "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). As originally filed, the affidavit states it was "translated by: Margie Ugarte" with an accompanying signature. (Doc. 182-7 at 2). Plaintiff has since provided an affidavit from Ms. Ugarte in which she explains she is fluent in English and Spanish, she has been employed by Plaintiff's counsel for seventeen years, during which time she has translated for Plaintiff's counsel, and that she read the affidavit to Plaintiff in Spanish "because he does not read or speak the English language and he needs to be assured that [his counsel] is providing the correct information on his behalf." (Doc. 233 at 109). Another of Plaintiff's counsel's employees, Jonathan Montalvo, stated in an affidavit that he is also fluent in English and Spanish and read the affidavit to Plaintiff in Spanish. (Doc. 233 at 109-10). Mr. Montalvo states he made sure Plaintiff understood the affidavit by answering any questions he had. *Id.* In addition to providing these affidavits, Plaintiff argues Defendant's objection is now moot because Plaintiff has testified to the same information in the affidavit. *Id.* at 2.

Plaintiff's affidavit briefly discusses his version of events, including that he was not mopping tar at the time of incident, that one of his co-employees was pushing the tar lugger when the malfunctioning tire caused the tar lugger to fall over, and that the tar lugger began to shake and suddenly sprayed tar onto him. (Doc. 182-7 at 1-2). Plaintiff testified to the same at his deposition through the use of an interpreter. *See* (Doc. 226-1 at 1, 3-4, 11-12). Both parties have relied on Plaintiff's deposition testimony rather than his affidavit. *See* (Doc. 226 at 2-7); (Doc. 233 at 3-4, 7-8). Thus, even if Plaintiff's affidavit was not sufficiently authenticated and is inadmissible, Plaintiff has testified to

the same facts at his deposition, and neither party has objected to that testimony as inaccurately translated. Accordingly, the Court agrees that this issue is moot, and will rely on Plaintiff's deposition testimony rather than the affidavit.

 B. *Governing Law*

  1. *Delgado v. Phelps Dodge Chino, Inc.*

In *Delgado*, the New Mexico Supreme Court made a significant change in the law with regard to tort claims by injured workers against their employers. 2001-NMSC-034, ¶ 26. Before *Delgado*, an injured worker could pursue tort claims against an employer outside the NMWCA only if the injured worker could show that the employer's actual intent was to cause injury to the worker. *Id.*, ¶ 16. The *Delgado* court found that the actual intent test provided an employer with virtual absolute immunity from suits for abusing its workers as long as the abuse was motivated by economic gain or greed rather than an intent to injure its workers. *Id.*, ¶ 18. Therefore, the court held that employers would be subject to a cause of action in tort if they willfully or intentionally caused injury to an employee. *Id.*, ¶ 24. The court set forth a three-pronged test to determine whether an employer's "willfulness renders a worker's injury non-accidental, and therefore outside the scope of" the NMWCA:

> (1) the employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker;
>
> (2) the employer expects the intentional act or omission to result in injury, or has utterly disregarded the consequences; and
>
> (3) the intentional act or omission proximately causes the injury.

*Id.*, ¶ 26.

The New Mexico Court of Appeals has held that courts must keep the facts of *Delgado* in mind when determining whether an accident meets the *Delgado* test as a matter of law. *Morales v. Reynolds*, 2004-NMCA-098, ¶ 10, 136 N.M. 280, 97 P.3d 612. Accordingly, the Court will begin with a discussion of *Delgado* itself. The plaintiff in *Delgado* worked at a copper smelting plant that distilled copper by superheating rock to over 2000 degrees Fahrenheit in a furnace. *Delgado*, 2001-NMSC-034, ¶ 3. Inside the furnace, the superheated molten rock separated into usable copper ore, which was skimmed off the top, and unusable "slag," which drained down into a fifteen-foot-tall cauldron, called a "ladle," which sat in a tunnel below the furnace. *Id.* When the ladle reached three-quarters of its capacity, standard procedure was to stop the flow of slag and remove the ladle using a specialized truck. *Id.*

One night, Mr. Delgado's supervisors pressured him and his shorthanded crew to work harder in order to compensate for a recent ten-day shutdown. *Id.*, ¶ 4. Suddenly, an emergency situation occurred called a "runaway:" the ladle had reached three-quarters capacity, but the workers could not stop the flow of slag into the ladle, so it started overflowing. *Id.* The slag flowed faster than ever before, creating the worst runaway the plant ever experienced. *Id.* The supervisors could have stopped the runaway by shutting off the furnace, but they chose not to in order to avoid further economic losses. *Id.* Instead, they ordered Mr. Delgado to remove the ladle alone, despite the fact he had not ever done so during a runaway and molten slag was spilling over the ladle's brim. *Id.*

As Mr. Delgado entered the tunnel, he saw the ladle overflowing and radioed his supervisors to tell them he was not qualified or able to remove the ladle. *Id.*, ¶ 5. Mr.

Delgado's supervisors insisted he do it alone over his repeated protests and requests for help. *Id.* Shortly after he entered the tunnel, the lights shorted out, black smoke poured out of the tunnel, and Mr. Delgado appeared out of the smoke completely covered in flames. *Id.* He then collapsed before his coworkers could put him out. *Id.* The truck Mr. Delgado drove into the tunnel had burned all over, its windows and tires had melted, and the caps to its gas tanks were missing. *Id.*, ¶ 6. Mr. Delgado himself suffered third-degree burns over his entire body and died three weeks later. *Id.*, ¶ 5. Mr. Delgado's widow brought claims of wrongful death and loss of consortium, prima facie tort, and intentional infliction of emotional distress against the employer and two co-workers. The district court and New Mexico Court of Appeals dismissed the claims on the grounds that the NMWCA provided the exclusive remedy for Mr. Delgado's death. *Id.*, ¶ 1.

On review of these decisions, the New Mexico Supreme Court announced a three-pronged standard for when "willfulness renders a worker's injury non-accidental." *Id.*, ¶ 26. First, the employer must have engaged in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker. *Id.* This is an "objective threshold question" used to "determine whether a reasonable person would expect the injury suffered by the worker" given the employer's actions. *Id.*, ¶ 27. Second, the employer must have expected the intentional act or omission to result in the employee's injury, or have "utterly disregarded the consequences." *Id.*, ¶ 26. This prong examines the employer's "subjective state of mind," and requires more than an employer "negligently" failing to expect the

employee's injury. *Id.*, ¶ 28. Finally, the employer's intentional acts or omissions must proximately cause the employee's injury. *Id.*, ¶ 29.

2. <u>Cases Interpreting Delgado</u>

In *Morales v. Reynolds*, the New Mexico Court of Appeals considered two consolidated tort actions brought by employees against their employers in the wake of the *Delgado* decision. 2004-NMCA-098, ¶ 1. The plaintiff in the first case alleged his employer willfully or intentionally ordered him to fix a pump carrying a dangerous chemical, and that as he was fixing the pump some of the chemical was released, which caused the hood of his protective gear to lift resulting in injury. *Id.*, ¶ 2-3. In the second case, the plaintiff was injured while working on scaffolding sixteen feet above ground when a metal sheet slipped from the hands of another employee. *Id.*, ¶ 4. The plaintiff claimed his employer acted intentionally by failing to provide him with adequate safety equipment. *Id.*, ¶ 5.

The *Morales* court found that neither plaintiff established a *Delgado* claim. *Id.*, ¶¶ 20-29. The court found that the first plaintiff's claim could not survive summary judgment because "he had worked on a pump with the same equipment numerous times before, and his safety hood had even popped off in the past without causing any injury." *Id.*, ¶ 22. The court explained that "the presence of a dangerous chemical alone is not enough to show employer willfulness," and "the availability of other, better safety equipment does not equate with a showing that a reasonable person would have anticipated [the plaintiff's] completion of a routine job using routine equipment would lead to an injury." *Id.* Similarly, the court found that the second plaintiff failed to state a *Delgado* claim

because "there is no indication that the failure to provide safety devices was anything but negligent in this case." *Id.*, ¶ 28.

In reaching its conclusion, the New Mexico Court of Appeals stated that, when considering whether or not a claim is barred by the NMWCA, courts "must bear in mind the type of unconscionable conduct that *Delgado* sought to deter." *Id.*, ¶ 10. The court emphasized that the egregious conduct in *Delgado* was "a combination of deadly conditions, profit-motivated disregard for easily implemented safety measures, complete lack of worker training or preparation, and outright denial of assistance to a worker in a terrifying situation." *Id.* The court explained that *Delgado* was not intended to "eviscerate" the provisions of the NMWCA, but that it instead "merely sought to deter . . . extreme employer conduct." *Id.*, ¶ 13.

The *Morales* court also discussed two federal cases interpreting *Delgado*. In one case, the employee alleged his employer failed to provide adequate training and supervision, failed to provide a safety device, and assigned the employee a task outside his normal work. *Id.*, ¶ 11 (citing *Cordova v. Peavey Co.*, 273 F. Supp. 2d 1213, 1216 (D.N.M. 2003), *aff'd* 111 Fed. Appx. 992 (10th Cir. 2004) (unpublished)). The second case involved a worker who claimed his employer egregiously failed to provide safer equipment. *Id.*, ¶ 12 (citing *Wells v. US Foodservice, Inc.*, 95 Fed. Appx. 302 (10th Cir. 2004) (unpublished)). In each of these cases, the courts determined the plaintiffs did not meet *Delgado*'s requirements. *Id.*, ¶ 11-12. The *Morales* court agreed with those decisions, stating "the mere assertion that the employer did or did not do something that somehow led to the injurious event is not adequate to meet" the *Delgado* test. *Id.*, ¶ 13. Instead, the court explained that in order to defeat a pretrial dispositive motion,

"plaintiffs must present evidence that the employer met each of the three *Delgado* elements through actions that exemplify a comparable degree of egregiousness as the employer in *Delgado*." *Id.*, ¶ 14.

Similarly, in *Dominguez v. Perovich Properties, Inc.*, the New Mexico Court of Appeals found that an employer's failure to observe safety measures is not enough to establish a *Delgado* claim. 2005-NMCA-050, ¶ 22, 137 N.M. 401, 111 P.3d 721. In that case, an employee at a gravel pit was injured when he was standing on a conveyor belt and his supervisor, believing the employee had stepped off the belt, unexpectedly started the belt. *Id.*, ¶¶ 3-4. The employee claimed his employer's conduct was egregious because it failed to use lock-out devices, failed to report safety violations, and failed to obtain the required mining permit, among other things. *Id.*, ¶ 8. The New Mexico Court of Appeals held that "an employer's egregious and knowing general disregard for safety measures" does not generally establish a *Delgado* claim. *Id.*, ¶ 7. The court explained that the "general failure to provide safety devices" did not in and of itself make the employee's injury likely, and *Delgado* requires "more than the disregard of preventative safety devices." *Id.*, ¶¶ 21-22.

In addition, the court stated that, although ignoring safety requirements designed to prevent accidents is "appalling," "[t]he possibility . . . that an accident might occur because of an unexpected careless act of a co-employee does not meet the *Delgado* standard." *Id.*, ¶ 22. Instead, "the critical measure" is "whether the employer has, in a specific dangerous circumstance, required the employee to perform a task where the employer is or should be clearly aware that there is a substantial likelihood the employee will suffer injury or death by performing the task." *Id.*; *see also May v. DCP*

*Midstream, L.P.*, 2010-NMCA-087, ¶ 13, 148 N.M. 595, 241 P.3d 193 (finding that "the absence of safety measures by itself demonstrates neither intent nor an inherent probability of injury," and "having an employee perform a routine, familiar task which he had performed before is not the same as sending an employee to face certain injury"), *Chairez v. James Hamilton Const. Co.*, 2009-NMCA-093, ¶¶ 1, 4-7, 146 N.M. 794, 215 P.3d 732 (finding that the employer's modification of equipment in a way that made it more dangerous does not constitute a *Delgado* claim because there was no evidence suggesting that the employer intended the employee to be in a position where he would be exposed to the danger).

More recently, two cases in this Court have considered *Delgado* claims. First, in *Kidder v. Intel Corporation*, 2014 WL 12567157 (D.N.M. July 14, 2014) (unpublished), the court found that the plaintiff established a *Delgado* claim sufficient to defeat a motion for summary judgment. The plaintiff worked as an equipment technician, was required to use a cleaning technique for close to twenty-four months that exposed him to lead, and suffered lead exposure-related health problems. *Id.* at *6. The court found that the plaintiff established a *Delgado* claim because he presented the following facts: other cleaning techniques existed that could have limited the plaintiff's exposure to lead; the employer was aware that the cleaning technique used by the plaintiff exposed him to lead over a nearly twenty-four month period; and the employer knew the plaintiff should have worn a safety mask. *Id.* at 6-7. The court found that this case was similar to *Delgado* because the plaintiff was required to perform an unsafe task that was likely to cause him severe injury, and because there was not an unexpected or unlikely accident that caused the injury. *Id.* at 7 ("The cleaning process exposing Plaintiff to lead for such

a lengthy period and then Plaintiff becoming ill is unlike the unforeseen and unexpected accidents in *Cordova* or *Dominguez* and more like the fairly certain injury that occurred in *Delgado.*").

In contrast, in *Anchondo v. Basic Energy Services, Inc.*, 2015 WL 12777961 (D.N.M. March 18, 2015) (unpublished), the court found that the employer's conduct was not sufficiently egregious to establish a *Delgado* claim. There, the plaintiff was performing his routine task as a derrickman on an oil rig. His job was to ascend to the top of a 96-foot derrick and pull rods from the oil well to assess their cleanliness and build-up of paraffin, which is a sticky substance that accumulates on the rods and causes an unsafe and dangerous condition. *Id.* at *1. One day, the rods he was pulling were coated with a large amount of black paraffin build-up, which rendered the rods unsafe to pull and re-insert without using hot oil to treat them. The plaintiff asked for hot oil to treat the rods, and was denied the hot oil. *Id.* at *2. The next day, the plaintiff continued pulling the rods coated with black paraffin. The paraffin caused significant shaking of the derrick, and, one hour into the plaintiff's shift, one of the rods began spinning rapidly towards his head. He put his hand out to prevent the rod from hitting his head, the rod adhered to his glove, and his left thumb was then exposed and detached from his hand by the spinning rod. *Id.*

The Court found that these facts did not constitute a *Delgado* claim because the plaintiff was engaged in a routine and familiar task using his regular equipment, "whereas in *Delgado* the employer ordered the employee to respond to a suddenly appearing emergency that fell outside of the parameters of his ordinary duties and that he had no training or experience in addressing." *Id.* at *6. The Court reasoned that the

employer's denial of the plaintiff's request for hot oil to help with the paraffin "was not extraordinary" because "it was Basic Energy's routine to order employees to continue to pull rods coated with paraffin after denying the employees hot oil to resolve the paraffin build-up and [the plaintiff] does not allege that this routine resulted in any injuries other than Anchondo's." *Id.* at *7. Moreover, the Court stated that requiring the plaintiff "to undertake a task which posed a safety concern or that was unsafe or dangerous is not necessarily the equivalent of ordering an employee alone to assume the obvious risk of certain death or extreme injury as occurred in *Delgado*." *Id.* Therefore, the Court found that the plaintiff did not allege "sufficient facts establishing that the harm Anchondo faced was necessarily comparable to that Delgado faced." *Id.*

C. <u>Application to Plaintiff's Case</u>

Plaintiff argues the circumstances in this case establish a *Delgado* claim for three reasons: first, Defendant provided a defective, dangerous tar lugger; second, Defendant failed to properly train or supervise its employers in how to use the tar lugger; and third, Defendant failed to clear a safe path on the roof for the tar lugger. (Doc. 182 at 5-18); (Doc. 233 at 3-9). Defendant responds that as a matter of law Plaintiff cannot show that the facts of this case are sufficiently egregious to establish a *Delgado* claim. (Doc. 226 at 2-7, 8-13).

1. <u>Failure to Ensure the Tar Lugger was Repaired</u>

First, Plaintiff claims Defendant engaged in an intentional act or omission by providing a tar lugger that Defendant knew had a defective tire. (Doc. 182 at 9). Plaintiff contends Defendant knew it was exposing its workers to serious danger because it is foreseeable that a defective tar lugger would tip which would cause hot tar to erupt out

of it. *Id.* Plaintiff further argues that providing a defective tar lugger was in violation of the lugger's operating manual, as was failing to ensure that a qualified mechanic repaired or replaced the damaged tire. *Id.* In his Surreply, Plaintiff contends Defendant also failed to use one of the other seven tar luggers Defendant owned. (Doc. 233 at 3).

In its Reply, Defendant states that Plaintiff's allegation that Defendant knowingly provided a tar lugger with a defective tire was raised for the first time in Plaintiff's Response to the Motion for Summary Judgment, and that Plaintiff testified that he never saw the tire fall off the lugger. (Doc. 226 at 5, 6). Nevertheless, Defendant argues that this theory does not rise to the level of egregiousness required by *Delgado* because the evidence shows that, once told about the defective tire, Defendant ordered the tire to be fixed, followed up on the repair, and was told the tire had been fixed. *Id.* at 6-7; (Doc. 226-1 at 17, 19-20) (Plaintiff's testimony: "Q. So to your knowledge, from what you heard with your own ears was that Carlos Ortiz was made aware of a defect in the tire and then later asked if it was fixed and was told it was fixed, correct? A. Yes."). Therefore, Defendant contends that even if the Court assumes the tire was defective and fell off the lugger, the facts of this case do not fall within the scope of *Delgado*. *Id.* at 7.

Courts interpreting *Delgado* have held that failure to provide safe equipment does not necessarily equate to a finding that an employer engaged in an intentional act or omission that is reasonably expected to result in injury. *See, e.g., May*, 2010-NMCA-087, ¶ 14 (finding that, although the employer "allowed a negligently dangerous condition to persist" by using unsafe equipment, there was no indication that the employer "knew or expected" Plaintiff's injuries would occur). In addition, "the availability

of other, better safety equipment does not equate with a showing that a reasonable person would have anticipated [the plaintiff's] completion of a routine job using routine equipment would lead to an injury." *Morales*, 2004-NMCA-098, ¶ 22.

Here, while Plaintiff states Defendant provided its employees with a tar lugger that had a defective tire, the parties do not dispute that Defendant had ordered the tire to be fixed, followed up by asking if it had been fixed, and was told that it had been fixed. (Doc. 226-1 at 17, 19-20). Even if Defendant could have taken additional steps to ensure the wheel was adequately fixed, or could have used one of its other tar luggers, these facts do not establish that Defendant "knew or expected" that Plaintiff would be injured by the tar lugger, or that Defendant "specifically and willfully" put Plaintiff in harm's way by having him work near the tar lugger. *May*, 2010-NMCA-087, ¶ 14; *Dominguez*, 2005-NMCA-050, ¶ 22. As explained in *Anchondo*, requiring Plaintiff "to undertake a task which posed a safety concern or that was unsafe or dangerous is not necessarily the equivalent of ordering an employee alone to assume the obvious risk of certain death or extreme injury as occurred in *Delgado*." 2015 WL 12777961, at *7. Accordingly, the Court finds that this theory fails to meet the *Delgado* factors.

### 2. *Failure to Train and Supervise Employees*

Next, Plaintiff argues that Defendant's failure to train and supervise its employees is egregious enough to warrant a *Delgado* claim. Plaintiff claims that Mr. Ortiz knew the danger of operating the tar lugger because he had read the tar lugger's manual, but Defendant still did not train its employees in how to safely use the tar lugger. (Doc. 182 at 4, 11). Further, according to Plaintiff, Defendant failed to supervise its employees' dangerous and unsafe use of the tar lugger, which caused the tar lugger

to fall over and eventually spray molten tar onto Plaintiff. *Id.* at 5. Plaintiff also claims there is a fact issue regarding conflicting deposition testimony about whether or when Defendant's employees picked up the tar lugger. (Doc. 233 at 9).

Under New Mexico law, the assertion that an employer did not properly train or supervise its employees is "not adequate to meet the requirements of *Delgado.*" *Morales*, 2004-NMCA-098, ¶ 13. In *Morales*, the New Mexico Court of Appeals held that failure to train or supervise is not enough to state a *Delgado* claim because it does not show that the employer intentionally put an injured employee in harm's way, which *Delgado* requires. *Id.*, ¶¶ 11-12 (discussing *Cordova* and *Wells*); *see also May*, 2010-NMCA-087, ¶¶ 10, 13. Instead, the "critical measure" is whether the employer "in a specific dangerous circumstance, required the employee to perform a task where the employer is or should clearly be aware that there is a substantial likelihood the employee will suffer injury or death by performing the task." *Dominguez*, 2005-NMCA-050, ¶ 22.

In this case, Plaintiff states that he was not operating or ordered to operate the tar lugger, that he had worked around tar luggers for years, and that he was comfortable doing so. (Doc. 226-1 at 7). Moreover, when he was injured, Plaintiff was performing his familiar, routine task of laying down sheets of insulation. Here again, Plaintiff's argument runs into *Anchondo* and *May*, where the courts held that "having an employee perform a routine, familiar task" does not constitute a *Delgado* claim. 2015 WL 12777961, at *7; 2010-NMCA-087, ¶ 10. Furthermore, Plaintiff has not shown that Defendant required him to do something unsafe in response to a particular, dangerous situation, which is required for a *Delgado* claim. *See Anchondo*, 2015 WL 12777961, at *6 (distinguishing

the facts in that case from *Delgado* because "in *Delgado* the employer ordered the employee to respond to a suddenly appearing emergency that fell outside of the parameters of his ordinary duties and that he had no training or experience in addressing). To the extent there is a dispute of fact regarding whether Defendant's employees picked up the tar lugger, this fact is not material because it does not affect Plaintiff's legal argument. Even accepting Plaintiff's claim that Defendant failed to adequately supervise its employees when they picked up the tar lugger, Plaintiff does not allege that Defendant ordered employees to pick up the lugger or that Defendant knew that there was "a substantial likelihood" Plaintiff would "suffer injury or death" simply by working around the tar lugger. *Id.*; *see also Dominguez*, 2005-NMCA-050, ¶ 22. The Court, therefore, finds that Defendant is entitled to judgment as a matter of law as to this argument as well.

### 3.   *Failure to Ensure Safe Conditions*

Finally, Plaintiff claims that Defendant's failure to clear a safe path on the roof and its decision to allow other unsafe conditions was egregious enough to establish a *Delgado* claim. (Doc. 182 at 15-18). Plaintiff again relies on the tar lugger's manual, which states that the tar lugger should only be operated on clear, level, built-up roofs, that a chemical fire extinguisher should be on hand at all times, and that damaged tar luggers should not be used. *Id.*; (Doc. 182-3 at 3-5). Plaintiff also relies on an affidavit from a retained safety expert detailing ways the worksite was unsafe in his opinion, including a lack of safety and first aid equipment. (Doc. 182-4 at 4).

In *Dominguez*, the New Mexico Court of Appeals found that an employer's "egregious and knowing disregard for safety measures does not fall within *Delgado*."

*Dominguez*, 2005-NMCA-005, ¶ 17. The court acknowledged that "[i]t is appalling that some employers disregard safety requirements that are in place to help prevent injury and death in connection with the performance of an employee's work." *Id.*, ¶ 22. Still, "[t]he possibility . . . that an accident might occur because of an unexpected careless act of a co-employee does not meet the *Delgado* standard." *Id.* The unexpected careless act in *Dominguez* was someone starting a conveyor belt while the plaintiff was standing on it. *Id.*, ¶ 3.

Here, even assuming the roof could have been made safer by ensuring a debris-free path for the tar lugger, this is not sufficient for a *Delgado* claim. Again, the "critical measure" is whether Defendant ordered Plaintiff to do something where Defendant knew or should have known Plaintiff would suffer serious injury or death. *Id.*, ¶ 22. Plaintiff does not argue and has not provided evidence that Defendant ordered him to do anything unsafe or out of the ordinary. Even if the condition on the roof was unsafe in general, under New Mexico law that fact does not show Defendant willfully caused Plaintiff to be injured. Therefore, the Court finds that this claim does not meet *Delgado*'s requirements as a matter of law.

In addition, considering the facts of this case as a whole, the Court finds that they do not demonstrate a willfulness on the part of Defendant that renders Plaintiff's injuries non-accidental. *See Delgado*, 2001-NMSC-034, ¶ 26. In contrast to *Delgado*, Defendant did not order Plaintiff to perform an obviously dangerous task outside of his routine job, and Plaintiff did not ask Defendant if he could work elsewhere or if the job could be done any differently. In addition, there is no evidence that Defendant acted in a way that valued avoiding economic losses over Plaintiff's safety and life. Similarly, this case does

not align with the facts in *Kidder*, where the employer knew the plaintiff was being exposed to lead for twenty-four months, knew the plaintiff should have been wearing a safety mask and was not doing so, and did nothing about it. *Kidder*, 2014 WL 12567157, at *6-7.

The outcome of this case might be different if, for instance, Plaintiff was injured after Defendant required him to operate the tar lugger over his objection, or if Defendant ordered him to pick up the tar lugger after it had fallen over. However, viewing the evidence in the light most favorable to Plaintiff, the Court finds that the evidence shows Plaintiff was injured in an expected and unforeseen event, and Defendant's conduct does not rise to the level of egregiousness or "extreme employer conduct" *Delgado* sought to deter. *See Morales*, 2004-NMCA-098, ¶ 16 (explaining that workers' compensation cases raise a balance of interests wherein "[t]he need to provide a forum for the egregious conduct of employers like that in *Delgado* must be tempered by the need to preserve the bargain of the [NMWCA] in a meaningful way"). Accordingly, Plaintiff's claims fall within the scope of the NMWCA and Defendant is entitled to judgment as a matter of law.

## V. Conclusion

For the reasons stated above, the Court finds that there are no genuine disputes of material fact and that Plaintiff has not shown that the circumstances in this case meet the *Delgado* exception to the NMWCA. Plaintiff's claims against Defendant are therefore barred by the NMWCA, and Defendant is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that Plaintiff's *Unopposed Motion for Extension of Time to File Response to Defendant C. Ortiz Corp.'s Motion for Summary Judgment*,

(Doc. 179), is **GRANTED**; Defendant's *Motion for Summary Judgment*, (Doc. 172), is

**GRANTED**; and Plaintiff's claims against Defendant are **DISMISSED WITH**

**PREJUDICE**.

      **IT IS SO ORDERED.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE