IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

REFUGIO RAMOS,

    Plaintiff,

v.                                                                      CV No. 15-980 CG/KRS

FOAM AMERICA, INC., et al.,

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

**THIS MATTER** is before the Court on *Plaintiff's Motion for Reconsideration of April 5, 2018 Memorandum Opinion and Order (Doc. 229)* (the "Motion for Reconsideration"), (Doc. 236), filed May 3, 2018; *Defendants Great Northern Holding, LLC and Harrisonville Equipment Company's Response in Opposition to Plaintiff's Motion for Reconsideration* (the "Response"), (Doc. 240), filed May 18, 2018; and *Plaintiff's Reply in Support of Plaintiff's Motion for Reconsideration* (the "Reply"), (Doc. 242), filed June 1, 2018. Having considered the briefs, the record of the case, and relevant law, the Court finds that Plaintiff's Motion for Reconsideration shall be **DENIED**.

**I.   Background**

On April 5, 2018, the Court entered a Memorandum Opinion and Order finding that Defendants Great Northern Holding, LLC ("Great Northern") and Harrisonville Equipment Company ("HECO") are entitled to summary judgment on Plaintiff's claims for strict liability and negligence. (Doc. 229 at 18). Plaintiff alleges these Defendants are liable for injuries he sustained on November 19, 2013, while working on a roofing job when a tar lugger overturned, spraying and burning Plaintiff with hot tar. (Doc. 85 at 4). The tar lugger was manufactured by Defendant Reeves Roofing Equipment Co., Inc.

("Reeves"), and was purchased by Defendant C. Ortiz Corporation ("C. Ortiz) from a third party approximately ten years before the incident. (Doc. 173 at 3, ¶¶ 1-2); (Doc. 173-1 at 2). On October 15, 2012, Great Northern and Reeves entered into an Asset Purchase Agreement in which Reeves sold its assets to Great Northern, and on January 1, 2014, Great Northern assigned all of the assets it acquired from Reeves to HECO. (Doc. 173 at 4, ¶¶ 3, 7).

Great Northern and HECO moved for summary judgment, contending they did not supply and had no connection to the tar lugger at issue, and that they are not liable as successors to Reeves because they never produced or marketed Reeves tar luggers and they did not assume Reeves' liabilities. (Doc. 173 at 6-8). In response to the motion for summary judgment, Plaintiff argued Great Northern and HECO are liable as successors to Reeves because they continued to advertise the Reeves tar lugger and the parts necessary to repair it, customers who ordered a tar lugger from Great Northern and HECO expected to receive a product from Reeves, and they manufactured a tar lugger that was similar to the Reeves' tar lugger, called the "Panther" lugger. (Doc. 178 at 1, 5-6).

In considering the parties' contentions, the Court explained that the general rule under New Mexico law is that a successor corporation does not automatically acquire the liabilities or obligations of the predecessor corporation. (Doc. 229 at 6) (citing *Garcia v. Coe Mfg. Co.*, 1997-NMSC-013, ¶ 11, 933 P.2d 243). There are four traditional exceptions to this rule, which apply where: (1) there is an agreement to assume the predecessor's obligations; (2) the transfer results in a consolidation or merger; (3) there is a continuation of the predecessor corporation; or (4) the transfer is made for the

2

purpose of fraudulently avoiding liability. *Garcia*, 1997-NMSC-013, ¶ 12. Additionally, New Mexico recognizes the "product line" exception to the rule of successor non-liability. *Id.*, ¶¶ 13, 21.

The Court considered Plaintiff's contentions that Great Northern and HECO are liable as successors to Reeves under the *de facto* merger and product line exceptions, and found that the facts of this case do not satisfy either of those exceptions to the rule of successor non-liability. (Doc. 229 at 7-15). Therefore, the Court found Great Northern and HECO are entitled to summary judgment on Plaintiff's strict liability claim. *Id.* at 15. The Court further found that Great Northern and HECO did not have a duty to warn of alleged defects of the Reeves tar lugger, so Great Northern and HECO are also entitled to summary judgment on Plaintiff's negligence claim. *Id.* at 18.

Plaintiff brings his Motion for Reconsideration under Fed. R. Civ. P. 59(e), and contends the Court erred in its consideration of whether the *de facto* merger and product line exceptions to the rule of successor non-liability apply in this case. (Doc. 229 at 1-13). In Response, Great Northern and HECO state that Plaintiff "addresses the same issues and facts that have been exhaustively argued throughout this case," and that the Court did not err in its findings. (Doc. 240 at 2-9). In his Reply, Plaintiff maintains that the facts of this case satisfy the *de facto* merger and product line exceptions to the rule of successor non-liability. (Doc. 242 at 2-6).

**II.     Legal Standard**

A motion to reconsider under Fed. R. Civ. P. 59(e) may be granted in limited circumstances, such as when there is: (1) an intervening change in the controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent

3

manifest injustice. *Hayes Family Trust v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204 F.3d at 1012; *see also Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (a Rule 59(e) motion for reconsideration "should be granted only to correct manifest errors of law or to present newly discovered evidence"); *Otero v. Nat'l Distrib. Co., Inc.*, 627 F. Supp. 2d 1232, 1237 (D.N.M. 2009) (a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple").

### III. Analysis

#### A. De Facto Merger Exception

As stated, the general rule under New Mexico law is that a successor corporation does not automatically acquire the liabilities or obligations of the predecessor corporation, and New Mexico has only recognized five exceptions to this rule. *Garcia*, 1997-NMSC-013, ¶ 11. The exceptions to successor non-liability are found where: (1) there is an agreement to assume the purchased company's obligations; (2) there is an explicit consolidation or merger of the companies; (3) there is a continuation of the predecessor corporation; (4) the transfer is made for the purpose of fraudulently avoiding liability; or (5) the successor continues to produce and market the same product line, using the same designs, equipment, and name. *Id.*, ¶¶ 12, 13, 17, 21.

In response to Defendant's Motion for Summary Judgment, Plaintiff argued Great Northern and HECO are liable as successors under the *de facto* merger and product line exceptions. (Doc. 178 at 8-22). In the Memorandum Opinion and Order, the Court noted that New Mexico has not recognized *de facto* merger as an exception to the general rule of successor non-liability. (Doc. 229 at 7). Nevertheless, the Court acknowledged that the *de facto* merger factors are similar to the continuation of the corporation factors, which is an exception that is recognized in New Mexico. *Id.* (citing *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 468 (3rd Cir. 2006), which treated the *de facto* merger and continuation exceptions identically, stating "[t]he *de facto* merger exception is similar to the continuation exception, save that the latter focuses on situations in which the purchaser is merely a restructured or reorganized form of the seller"). Therefore, the Court considered whether the facts of this case satisfy the *de facto* merger or continuation exceptions.

A *de facto* merger exists when there is: (1) continuity of management, employees, location, and assets; (2) continuity of shareholders; (3) the seller ceases operations and dissolves soon after the transfer; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business. *Wessinger v. Vetter Corp.*, 685 F.Supp. 769, 773 (D. Kan.1987); 19 Am. Jur. 2d *Corporations* § 2719 (1986). The Court found these factors are not met here because there was no continuity of management or shareholders after the sale of Reeves, and because Great Northern did not assume the liabilities and obligations necessary for the uninterrupted continuation of Reeves. (Doc. 229 at 8-9).

5

In his Motion for Reconsideration, Plaintiff contends the Court erred by failing to address evidence that Reeves received 20% of the net profits of Great Northern's commercial roofing division products as part of the sale of Reeves to Great Northern. (Doc. 236 at 2-3, 9-10). The Asset Purchase Agreement entered into by Reeves and Great Northern provides that, as part of Great Northern's purchase of Reeves' assets, Great Northern shall pay Reeves 20% of the net profits from its commercial roofing division for a period of time starting 12 months after the sale date, and ending six years after the sale date or when Great Northern has paid Reeves a total of $250,000, whichever is first. (Doc. 178-6 at 2, Section 3(a)(iii) of the Asset Purchase Agreement).

Courts have said that "[c]ontinuity of shareholders is likely the most important requirement for a *de facto* merger." *Wessinger*, 685 F.Supp. at 773. In addition, courts have emphasized that the mere sale of assets from one corporation to another, without a transfer of the predecessor's liabilities, does not satisfy the continuity of shareholders factor for a *de facto* merger because "[a]ll that has transferred is the business." *Id.* Here, while the Asset Purchase Agreement provided that Reeves would be paid for its assets by way of receiving a portion of Great Northern's net profits for a finite time period and up to a finite amount, the agreement also explicitly stated that Great Northern was not assuming the liabilities and obligations of Reeves' business. (Doc. 173-1 at 9, ¶ 7) (Sales Contract: "Buyer is not assuming any liabilities or obligations of Seller and Seller shall be responsible for any warranty or other claims relating to the Purchased Assets arising out of any product produced or sold by Seller.").

Plaintiff cites to no case law in support of his argument that the fact that Reeves was paid a portion of Great Northern's net profits for a finite time period and for a finite

6

amount satisfies the continuity of shareholders factor for a *de facto* merger. As explained in *Wessinger*, "[t]here is little logic and little justice in requiring the successor to assume the liabilities of the predecessor" when there was no agreement to do so, "especially after the fact of sale when it is impossible for the successor to return to negotiations to change the price." *Id.* (citing *Nguyen v. Johnson Machine and Press Co.*, 433 N.E. 2d 1104, 1106-07 (Ill. Ct. App. 1982)). Therefore, the Court finds that the payment to Reeves of a portion of Great Northern's profits for a finite time period and up to a finite amount, absent any transfer of liabilities, constitutes a "mere sale of assets" instead of a "continuity of shareholders" under the *de facto* merger exception.

In addition, Plaintiff contends the Court erred in finding Great Northern did not assume the liabilities and obligations necessary for the uninterrupted continuation of Reeves' business. *Id.* at 4-5, 10-11. In making this finding, the Court relied on the parties' agreement that Great Northern and HECO would not assume the liabilities and obligations of Reeves' business. (Doc. 229 at 8-9). Plaintiff argues this is an error because the liabilities or obligations associated with warranties or other claims "are not the kind of liabilities necessary for the continuation of business operations." (Doc. 236 at 11) (citing *Diaz v. South Bend Lathe, Inc.*, 707 F.Supp. 97 (E.D.N.Y. 1989)).

While the court in *Diaz* found there was a *de facto* merger in that case even though the successor corporation did not assume the predecessor's warranty obligations, the court emphasized that the successor corporation "also agreed to use its best efforts to hire all of [the predecessor's] employees," and, in fact hired approximately 95% of the predecessor's employees. 707 F. Supp. at 102. Moreover, the successor in *Diaz* continued to manufacture the product at issue under the name of the

7

predecessor and using the same equipment and employees used by the predecessor. *Id.* at 99. In contrast, here it is undisputed that Great Northern and HECO did not continue to manufacture the Reeves tar lugger using the same equipment and employees and, instead, only manufactured the "Panther" tar lugger. *See, e.g.,* (Doc. 173-1 at 39, 41-42); (Doc. 178-1 at 23); (Doc. 178-2 at 3). Therefore, the Court finds that Plaintiff has not shown clear error in the Court's reasoning.

Finally, even if the Court were to find that the facts of this case satisfy the *de facto* merger factors, the fact remains that New Mexico does not recognize that exception to the rule of successor non-liability. The Court entertained Plaintiff's argument that there was a *de facto* merger because some courts have noted the similarity between the *de facto* merger exception and the continuation of the corporation exception. There is no controlling case, however, that obliges the Court to consider whether the *de facto* merger factors have been met. Moreover, Plaintiff does not challenge the Court's finding that the facts of this case do not satisfy the continuation of the corporation exception because there is no continuity of management or ownership, and there are no facts showing there was inadequate consideration for the sale of Reeves' assets. Therefore, because the facts of this case do not satisfy any of the recognized exceptions to the rule of successor non-liability, the Court finds no basis to reconsider its decision on the *de facto* merger exception.

B. <u>Product Line Exception</u>

Next, Plaintiff contends the Court erred in finding the facts of this case do not satisfy the product line exception to the rule of successor non-liability. (Doc. 236 at 6). Plaintiff argues the Court "misapplies" this exception because "the product can change form, be redesigned completely, change size, color, and dimensions," and because "the product can be combined with an existing product." *Id.* Therefore, Plaintiff contends that Great Northern continues to sell the Reeves tar lugger product line even though it has a different name, color, and appearance. *Id.*

The Court considered this argument extensively in its Memorandum Opinion and Order. *See* (Doc. 229 at 9-16). The Court noted the rationale behind the product line exception is "the necessity of protecting an injured person who may be left without a remedy if the predecessor has dissolved, is defunct, or is otherwise unavailable to respond in damages," and that the product line exception applies when "the successor continues to produce and market the same product, using the same designs, equipment, and name." 1997-NMSC-013, ¶¶ 15, 17. The Court relied on cases where courts found the product line exception requires the successor entity to continue the specific product line at issue, and does not apply when a successor modifies or improves the subject product's design. (Doc. 229 at 11-13). In addition, the Court considered the case relied on by Plaintiff, *Rawlings v. D.M. Oliver, Inc.*, 97 Cal. App. 3d 890, 894 (Cal. Ct. App. 1979), where the California Court of Appeals applied the product line exception even though the successor did not continue to manufacture the predecessor's identical product line. (Doc. 229 at 13-14). The Court found the *Rawlings* decision is not binding on this Court, is inconsistent with other cases applying the product line exception, and is distinguishable from the facts of this case. *Id.* at 13-14.

The Court, therefore, found that the product line exception does not apply here because Great Northern and HECO did not continue to manufacture or sell the same product that injured Plaintiff. *Id.* at 14. The Court relied on the undisputed facts that Great Northern and HECO did not actually manufacture, sell, repair, or service Reeves tar luggers. *Id.* (citing *Garcia*, 1997-NMSC-013, ¶ 22, which limited the product line exception to cases where a successor continues to produce the "same product, using the same designs, equipment, and name"). In addition, the Court found that applying the product line continuation exception in this case would violate the express rationale underlying this exception, which is to protect an injured person who may be left without a remedy if the predecessor is not available to respond to a law suit. *Id.* at 14-15. Because Reeves continued to exist after it was sold to Great Northern, and it appeared in this lawsuit and vigorously defended its interests, the Court found the acquisition of Reeves by Great Northern did not result in an inability of Plaintiff to proceed against Reeves. *Id.* at 15.

In his Motion for Reconsideration, Plaintiff does not present an intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice regarding the Court's product line exception findings. Instead, Plaintiff restates arguments and cites to cases that were fully addressed by the Court in its Memorandum Opinion and Order. Therefore, the Court finds no basis to reconsider its decision regarding the product line exception. *See Servants of the Paraclete*, 204 F.3d at 1012 ("[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the

controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Reconsideration of April 5, 2018 Memorandum Opinion and Order (Doc. 229)*, (Doc. 236) is **DENIED**.

**IT IS SO ORDERED.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE